# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAI-AJAH KEEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 1:17-cv-01818-VAC-CJB |
| | ) | |
| DELAWARE STATE UNIVERSITY | ) | |
| BOARD OF TRUSTEES; CANDY | ) | |
| YOUNG, in her individual capacity; | ) | |
| PAULA DUFFY, in her individual capacity; | ) | |
| and RANDOLPH JOHNSON, in his | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPENING BRIEF IN
## SUPPORT OF THEIR MOTION TO DISMISS

**SAUL EWING ARNSTEIN & LEHR LLP**

James D. Taylor, Jr., Esquire (#4009)
Gerard M. Clodomir, Esquire (#5467)
1201 N. Market Street, Suite 2300
Wilmington, DE 19801
(302) 421-6800
James.taylor@saul.com
Gerard.clodomir@saul.com

*Counsel for Defendants Delaware State
University Board of Trustees, Candy Young,
Paula Duffy and Randolph Johnson*

Dated: February 20, 2018

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................II

NATURE AND STAGE OF PROCEEDINGS ........................................................................ 1

STATEMENT OF FACTS ........................................................................................................ 2

ARGUMENT .............................................................................................................................. 4

I.    BOTH PLAINTIFF'S CLAIMS ARE BARRED UNDER THE STATUTE OF LIMITATIONS. ............................................................................................................. 4

II.   PLAINTIFF HAS FAILED TO STATE A TITLE IX CLAIM. ....................................... 5

    A.    Plaintiff has not alleged (nor can she) that DSU was deliberately indifferent to her claim of sexual harassment ..................................................................................... 6

    B.    Plaintiff's Disagreement With the Sanction Imposed Does Not Create a Title IX Claim. ............................................................................................................... 7

    C.    Plaintiff's Claim Regarding the Brief, Supervised Contact in the Professor's Office Cannot Amount to "Deliberate Indifference." ............................................ 8

III.  PLAINTIFF HAS FAILED TO STATE A SECTION 1983 EQUAL PROTECTION CLAIM. ............................................................................................................................ 8

IV.  INDIVIDUAL DEFENDANTS ARE IMMUNE FROM SUIT UNDER THE QUALIFIED IMMUNITY ............................................................................................ 10

CONCLUSION .......................................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bernard v. E. Stroudsburg Univ.*,
   2016 WL 755486 (M.D. Pa. Feb. 24, 2016) ..............................................................................8

*Brown v. Daniels*,
   128 Fed. Appx. 910 (3d Cir. 2005) .........................................................................................10

*City of Cleburne v. Cleburne Living Ctr.*,
   473 U.S. 432 S.Ct. 3249, 87 L.Ed.2d 313 (1985)......................................................................9

*Crenshaw v. Int'l Longshoreman Ass'n 1694*,
   2014 WL 1877357 (D. Del. May 9, 2014)................................................................................8

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
   526 U.S. 629 (1999)............................................................................................................5, 7, 8

*Doe v. Cape Henlopen Sch. Dist.*,
   759 F. Supp. 2d 522 (D. Del. 2011) ..........................................................................................7

*Doe v. Sch. Bd. Of Broward Cnty*,
   604 F.3d 1248 (11th Cir. 2010) ................................................................................................8

*Gebser v. Lago Vista Indep. Sch. Dist.*,
   524 U.S. 274 (1998)..................................................................................................................6

*George v. Rehiel*,
   738 F.3d 562 (3d Cir. 2013)....................................................................................................10

*P.K. ex rel. Hassinger v. Caesar Rodney High Sch.*,
   2012 WL 253439 (D. Del. Jan. 27, 2012)................................................................................6

*Johnson v. Delaware/Dep't of Labor*,
   2014 WL 3828439 (D. Del. Aug. 1, 2014) ..............................................................................9

*Lamb-Bowman v. Delaware State Univ.*,
   1999 WL 1250889 (D. Del. Dec. 10, 1999).............................................................................4

*Oden v. N. Marianas Coll.*,
   440 F.3d 1085 (9th Cir. 2006) ..................................................................................................7

*Reach Acad. for Boys & Girls, Inc. v. Delaware Dep't of Educ.*,
   46 F. Supp. 3d 455 (D. Del. 2014)............................................................................................9

*Saravanan v. Drexel Univ.*,
    2017 WL 5659821 (E.D. Pa. Nov. 24, 2017) ............................................................................5

*Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*,
    422 F.3d 141 (3d Cir.2005)..................................................................................................5, 9

*Smith v. Delaware*,
    236 F. Supp. 3d 882 (D. Del. 2017)........................................................................................4

*T.B. v. New Kensington-Arnold Sch. Dist.*,
    2016 WL 6879569 (W.D. Pa. Nov. 22, 2016) ........................................................................5

*Terrell v. Delaware State Univ.*,
    2010 WL 2952221 (D. Del. July 23, 2010) ...........................................................................6

*Torisky v. Schweiker*,
    446 F.3d 438 (3d Cir. 2006)..................................................................................................10

*Williams v. Bd. of Regents of Univ. Sys. of Georgia*,
    477 F.3d 1282 (11th Cir. 2007) ..............................................................................................5

**Other Authorities**

U.S. Const. amend. XIV ................................................................................................................1

Fed. R. Civ. P. 12(b)(6)..................................................................................................................2

## NATURE AND STAGE OF PROCEEDINGS

Mai-ajah Keel, a former student at Delaware State University ("DSU" or the "University"), asserts claims under Title IX and the 14th Amendment Equal Protection Clause, alleging that DSU did not respond appropriately to her report of a sexual assault by another former DSU student. The University takes allegations like these very seriously, and did so here. DSU and its Campus Police conducted two independent investigations, which resulted in the alleged perpetrator's arrest and suspension from DSU for the remainder of Keel's time at the University. Keel was also referred to counseling services, which DSU provided to Keel for several months. Keel apparently believes DSU should have done more, but her claims are untimely and would, in any event, fail as a matter of law.

Defendants have moved to dismiss the Complaint, and this is Defendants' Opening Brief in support of that Motion.

**STATEMENT OF FACTS**[1]

Keel alleges that on Friday, November 22, 2013, while fraternizing in a male student's dorm room, the student (the "Respondent") sexually assaulted her. (Compl. ¶¶ 13-16). A few days later, Keel reported the incident to one of her professors. (Compl. ¶ 18). Keel was referred to DSU's counseling services department, which arranged a meeting for both students with one of its counselors, Dr. Meek. (Compl. ¶ 18). At that meeting, the Respondent apologized to Keel and agreed that he would no longer contact her. (Compl. ¶ 20). Keel continued to attend counseling sessions with Dr. Meek for several months thereafter. (Compl. ¶ 22). Keel claims that during this time, the Respondent continued to approach her during their Band practices, which made Keel uncomfortable. (Compl. ¶ 22).

Over the following year, Keel made two anonymous reports of the November 2013 assault to the Delaware State University Police Department ("DSUPD"). (Compl. ¶¶ 23-24). The DSUPD opened an investigation, meeting first with Keel on February 5, 2015, and with the Respondent later that same day. (Compl. ¶ 24). After those meetings, DSUPD officers arrested the Respondent. (Compl. ¶ 24).

DSUPD also reported the matter to DSU's Title IX office the next day. (Compl. ¶ 24). The Title IX office opened its own investigation, which included a series of hearings on Keel's allegations, beginning in March 2015. (Compl. ¶ 33). Although the Respondent was initially found not responsible for violating the University's Code of Conduct, Keel appealed the decision and a second hearing was held. (Compl. ¶¶ 35-37). Following that new hearing, the panel found the Respondent responsible for a conduct violation and suspended him for a minimum of one

---

[1] Defendants dispute many of the facts alleged in Plaintiff's Complaint, and to the extent necessary, they will show them to be false following discovery. For purposes of this Motion under Rule 12(b)(6), however, the facts alleged by Plaintiff are taken as true.

academic year. (Compl. ¶ 37). As noted by Plaintiff, in suspending the Respondent, DSU was focused on making sure Keel could complete the remainder of her time at DSU without the fear of another assault by the Respondent. (Compl. ¶ 38). She quotes the disciplinary panel as follows:

> Having been found responsible for the sexual assault and rape of the complainant, the respondent is in violation of the General Standards of Conduct and Decorum and has exhibited violent behavior by sexually assaulting and raping the complainant. (Delaware State University, Division of Student Affairs Student Judicial Handbook, p. 5) Furthermore, the complainant has a right to continue her education and feel as though she is matriculating in a safe and secure academic environment. The complainant is now a senior. Removing the respondent for at least the 2015-2016 academic year will provide the complainant with the opportunity to do so.

(*Id.*)

Under circumstances not fully described in the Complaint, in or around September 2015, the Respondent was allowed on campus to meet with a professor. (Compl. ¶ 40). Although the Plaintiff recites that she was not "offer[ed] any security measures to ensure her safety," she does not allege either that the University had any reason to expect Keel would visit the office that day or that the University did not have other security measures in place. (*Id.*) While the Respondent was sitting in the professor's office, Keel unexpectedly visited that same office and apparently saw the Respondent inside. (*Id.*) There is no allegation that the two were ever alone or unsupervised. While Keel claims, solely on information and belief, that the Respondent was allowed on campus on other occasions, there are no allegations the she ever in fact saw him again.

Keel graduated from DSU on December 21, 2015. (Compl. ¶ 44). The following semester, with Keel no longer on campus, DSU readmitted the Respondent under the condition that he "abide by the Student Code of Conduct," and noting his prior unacceptable behavior. (Compl. ¶ 46).

3

**ARGUMENT**

Plaintiff's claims should be dismissed as untimely and because the allegations fail to state a claim. Moreover, the individual defendants are entitled to qualified immunity.

**I.  BOTH PLAINTIFF'S CLAIMS ARE BARRED UNDER THE STATUTE OF LIMITATIONS.**

Plaintiff's Title IX and Section 1983 Equal Protection claims are both subject to the same two-year statute of limitations governing state law causes of action for personal injuries. *See Lamb-Bowman v. Delaware State Univ.*, 1999 WL 1250889, at *9 (D. Del. Dec. 10, 1999) ("The statute of limitations for filing a cause of action under Title IX is the state statute of limitations governing causes of action for personal injuries. Because Delaware's statute of limitations for personal injury claims is two years . . . Plaintiff's Title IX claims are subject to a two-year statute of limitations."); *Smith v. Delaware*, 236 F. Supp. 3d 882, 888 (D. Del. 2017) ("For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions. In Delaware, § 1983 claims are subject to a two-year limitations period.")

With just one exception discussed below, *every* allegation in Plaintiff's complaint describes events that took place outside the limitations period. That is, the events occurred earlier than December 19, 2015, two years before Plaintiff's Complaint was filed. Plaintiff's Title IX and Section 1983 claims based on those allegations are thus untimely and must be dismissed.

The *only* allegation within the limitations period is Plaintiff's claim that the University readmitted the Respondent on or about January 13, 2016, a semester earlier than originally recommended by the disciplinary panel. (Compl. ¶ 46). But by then, Keel had already graduated and was no longer on campus. (Compl. ¶¶ 44 - 46). As Keel acknowledges, the disciplinary panel's intent was to protect Keel's "right to continue her education and feel as though she is

4

matriculating in a safe and secure academic environment," by ensuring that she could complete her tenure without the Respondent on campus. That is precisely what happened. As discussed below, to assert a Title IX claim, Plaintiff must allege that Defendants displayed "deliberate indifference" to Keel's alleged sexual assault. *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 119 (1999). Readmitting the Respondent after Keel graduated cannot as a matter of law satisfy that standard. Nor does that fact establish an Equal Protection claim, which requires a showing of purposeful discrimination on the basis of gender. *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.,* 422 F.3d 141, 151 (3d Cir.2005). And even if Plaintiff had a claim based on the Respondent's readmission, she has not alleged any harm arising as a result.

## II. PLAINTIFF HAS FAILED TO STATE A TITLE IX CLAIM.

In addition to the untimeliness of Plaintiff's Complaint, Plaintiff has failed to allege facts sufficient to state a claim. To state a Title IX claim, Plaintiff must allege that DSU was "deliberately indifferent to sexual harassment. . . ." *Davis Next Friend LaShonda D.*, 526 U.S., at 650. Moreover, the deliberate indifference must result in further harassment. *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1296 (11th Cir. 2007) ("Based on the *Davis* Court's language, we hold that a Title IX plaintiff at the motion to dismiss stage must allege that the Title IX recipient's deliberate indifference to the initial discrimination subjected the plaintiff to further discrimination."). "Deliberate indifference claims impose a significant burden on the plaintiff and consequently rarely proceed beyond a motion to dismiss." *Saravanan v. Drexel Univ.*, 2017 WL 5659821, at *7 (E.D. Pa. Nov. 24, 2017); *see also T.B. v. New Kensington-Arnold Sch. Dist.*, 2016 WL 6879569, at *7 (W.D. Pa. Nov. 22, 2016) ("The deliberate indifference standard sets a high bar for a plaintiff seeking to recover under Title IX.")

5

A.  **Plaintiff has not alleged (nor can she) that DSU was deliberately indifferent to her claim of sexual harassment**

The "deliberate indifference" standard requires Plaintiff to show that a University official, with authority to institute corrective measures on behalf of the University, had actual knowledge of Keel's alleged sexual assault, and did not adequately respond. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, (1998) ("[W]e hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond."). That is, the University "must merely respond to known peer harassment in a manner that is not clearly unreasonable." *P.K. ex rel. Hassinger v. Caesar Rodney High Sch.*, 2012 WL 253439, at *5 (D. Del. Jan. 27, 2012).[2] Put another way, "[t]o establish deliberate indifference, a plaintiff must show that the school made an official decision not to remedy the sexual harassment." *Terrell v. Delaware State Univ.*, 2010 WL 2952221, at *2 (D. Del. July 23, 2010).

Plaintiff does not allege that the University ignored her claim of sexual harassment. To the contrary, it is evident from her own allegations that:

- DSUPD conducted a criminal investigation of Plaintiff's claims, which resulted in the Respondent's arrest;

---

[2] As this Court notes in *P.K. ex rel. Hassinger*, "[t]his standard is 'not a mere reasonableness standard,' however, such that 'in an appropriate case, there is no reason why courts, on a motion to dismiss . . . could not identify a response as not 'clearly unreasonable' as a matter of law." 2012 WL 253439, at *5 (quoting *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)).

6

- DSU's Title IX office conducted its own investigation and held disciplinary hearings, which resulted in the removal of the Respondent from campus for the remainder of Plaintiff's tenure at the University; and

- Plaintiff was offered counseling services, which she participated in for months.

Plaintiff may believe the University's process was not perfect, or that it could have done more, but that is not the appropriate standard.

### B. Plaintiff's Disagreement With the Sanction Imposed Does Not Create a Title IX Claim.

As discussed briefly above, Plaintiff takes issue with DSU's decision to readmit Respondent a semester earlier than he was originally intended to remain off campus. Plaintiff challenges the decision as a violation of Title IX despite the fact that she had already graduated from DSU, was no longer on campus, and her right to remain free from further harassment by Respondent was thus in no way impacted by the decision. (Compl. ¶ 44).

In addition to the fact that Plaintiff has suffered no harm from Respondent's readmission, Plaintiff's quibble with the particular sanction does not establish a claim under Title IX. *See Oden v. N. Marianas Coll.*, 440 F.3d 1085, 1089 (9th Cir. 2006) (affirming dismissal of Title IX claim because "[a]n aggrieved party is not entitled to the precise remedy that he or she would prefer."); *Davis Next Friend LaShonda D. v.*, 526 U.S., at 648 ("Likewise, the dissent erroneously imagines that victims of peer harassment now have a Title IX right to make particular remedial demands.") The Supreme Court has further admonished courts to "refrain from second-guessing the disciplinary decisions made by school administrators." *Davis Next Friend LaShonda D.*, 526 U.S., at 648; *Doe v. Cape Henlopen Sch. Dist.*, 759 F. Supp. 2d 522, 532 (D. Del. 2011) ("School administrators receive substantial deference in cases of alleged student-on-student harassment.") Yet, that is precisely what Plaintiff asks this Court to do.

7

      C.      **Plaintiff's Claim Regarding the Brief, Supervised Contact in the Professor's Office Cannot Amount to "Deliberate Indifference."**

The remaining allegation describing Plaintiff's unforeseen contact with the Respondent following his suspension cannot form the basis of a Title IX claim. Plaintiff had a right to be free from further harassment. She had no right to require that the Respondent never step foot on campus while she was enrolled. There are no allegations that Respondent was unsupervised at any moment while on campus, that DSU had any reason to know that Plaintiff would happen upon the very same professor's office for an unscheduled visit or that Plaintiff and Respondent were alone. There is no allegation that he said anything to her; indeed, she alleges only that she saw him in the office. A brief, unintentional encounter in a professor's office cannot, as a matter of law, amount to deliberate indifference even if the claim were otherwise timely. *Bernard v. E. Stroudsburg Univ.*, 2016 WL 755486, at *9 (M.D. Pa. Feb. 24, 2016) ("Deliberate indifference is an exacting standard; school administrators will only be deemed deliberately indifferent if their 'response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.") (quoting *Doe v. Sch. Bd. Of Broward Cnty*, 604 F.3d 1248, 1259 (11th Cir. 2010).

In any event, as noted above, Plaintiff would need to further allege that any deliberate indifference resulted in additional harassment. *See Davis Next Friend LaShonda D.*, 526 U.S., at 644 ("That is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it.") Plaintiff makes no such allegations.

**III.    PLAINTIFF HAS FAILED TO STATE A SECTION 1983 EQUAL PROTECTION CLAIM.**

Once the Court strips away the legal conclusions and conclusory allegations of wrongdoing and gender bias in Plaintiff's Complaint, there is nothing to support her claim that certain DSU employees violated her Equal Protections rights. *See Crenshaw v. Int'l*

8

*Longshoreman Ass'n 1694*, 2014 WL 1877357, at *2 (D. Del. May 9, 2014) ("When determining whether dismissal is appropriate, the court must take three steps: (1) identify the elements of the claim, (2) review the complaint to strike conclusory allegations, and then (3) look at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged.") *Johnson v. Delaware/Dep't of Labor*, 2014 WL 3828439, at *3 (D. Del. Aug. 1, 2014) ("While the court draws all reasonable factual inferences in the light most favorable to a plaintiff, it rejects unsupported allegations, bald assertions, and legal conclusions.")

The Fourteenth Amendment's Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). "In order to bring a successful section 1983 claim for the denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." *Shuman ex rel. Shertzer,* 422 F.3d, at 151. "In other words, they must demonstrate that they received different treatment from that received by other individuals similarly situated." *Id.* In the context of a sex discrimination claim, plaintiffs must show that this disparate treatment was based upon gender. *Reach Acad. for Boys & Girls, Inc. v. Delaware Dep't of Educ.*, 46 F. Supp. 3d 455, 471 (D. Del. 2014).

Plaintiff has identified no similarly situated individuals who were treated differently. Indeed, there are no allegations to support her entirely conclusory assertion that the DSU employees named in the Complaint were motivated in any way by gender. She thus has not stated a claim under the Equal Protection Clause, and it should be dismissed.

## IV. INDIVIDUAL DEFENDANTS ARE IMMUNE FROM SUIT UNDER THE QUALIFIED IMMUNITY

Under Court II, Plaintiff purports to sue three individual DSU officials in their individual capacity for violation of the Equal Protections Clause. But these defendants are entitled to protections under the qualified immunity. The "qualified immunity shields government officials from personal liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *George v. Rehiel*, 738 F.3d 562, 571–72 (3d Cir. 2013). The doctrine mitigates the social costs of exposing government officials to personal liability, "by giving officials breathing room to make reasonable but mistaken judgments about open legal questions." *Id.* "Properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Id.*

"A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of alleged violation." *Torisky v. Schweiker*, 446 F.3d 438, 442–43 (3d Cir. 2006). For the reasons stated above, Plaintiff has not stated a viable Equal Protection claim, and thus the Court need not reach the second question in order to dismiss the individual defendants from this suit. But, even if the Court were to find sufficient allegations to support a claim of purposeful discrimination, the individual defendants should still be dismissed because they did not violate a clearly established right.

In considering whether particular conduct violates a clearly established right, "[t]he ultimate issue is whether reasonable officials in the defendants' position at the relevant time could have believed that, in light of what was in the decided case law, that their conduct would be lawful." *Brown v. Daniels*, 128 Fed. Appx. 910, 916 (3d Cir. 2005). "In order for the official to lose the protections of qualified immunity, existing precedent must have placed the statutory

or constitutional question beyond debate." *George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013). As noted, DSU responded meaningfully to Plaintiff's allegations of assault, without any indication of gender bias. Thus, even if we attribute the wrongdoing alleged in the Complaint to the individual defendants, the wrongdoing does not rise to the standard necessary to overcome the qualified immunity.

## CONCLUSION

For the reasons noted, Defendants respectfully request that the Complaint be dismissed with prejudice.

**SAUL EWING ARNSTEIN & LEHR LLP**

/s/ *James D. Taylor, Jr.*
James D. Taylor, Jr., Esquire (#4009)
Gerard M. Clodomir, Esquire (#5467)
1201 N. Market Street, Suite 2300
Wilmington, DE  19801
(302) 421-6800
James.taylor@saul.com
Gerard.clodomir@saul.com

*Counsel for Defendants Delaware State University Board of Trustees, Candy Young, Paula Duffy and Randolph Johnson*

Dated: February 20, 2018