IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAI-AJAH KEEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DELAWARE STATE UNIVERSITY | ) C.A. No. 17-1818 (MN) |
| BOARD OF TRUSTEES; CANDY | ) |
| YOUNG, in her individual capacity; PAULA | ) |
| DUFFY, in her individual capacity; and | ) |
| RANDOLPH JOHNSON, in his individual | ) |
| capacity, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Laura Davis Jones, James I. Stang, James E. O'Neill – PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, DE; Alexander S. Zalkin, Ryan M. Cohen – THE ZALKIN LAW FIRM, P.C., San Diego CA – Attorneys for Plaintiff

James D. Taylor, Jr., SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, DE – Attorneys for Defendants

February 8, 2019
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**:

Presently before the Court are the objections of Plaintiff Mai-Ajah Keel ("Plaintiff" or "Keel") (D.I. 20) to Magistrate Judge Fallon's Report and Recommendation (D.I. 19, "the Report"). The Report recommended granting the motion of Defendants Delaware State University Board of Trustees, Candy Young, Pamela Duffy, and Randolph Johnson (collectively "Defendants") to dismiss this case. (D.I. 10). The Court has reviewed the Report (D.I. 19), Plaintiff's objections and Defendants' responses thereto (D.I. 20, 22), and the Court has considered *de novo* the objected-to portions of the Report and the relevant portions of Defendants' motion to dismiss and Plaintiff's response to the motion (*see* D.I. 10, 11, 14, 15, 17). For the reasons set forth below, Plaintiff's objections are OVERRULED, the Report is ADOPTED and Defendant's motion to dismiss is GRANTED.[1]

## I. BACKGROUND

Plaintiff was a student at Delaware State University ("DSU") prior to her graduation on December 21, 2015. (D.I. 1 ¶¶ 9, 44). Defendant DSU University Board of Trustees is "the official governing body of [DSU] and is charged with operating and governing [DSU] . . . ." (D.I. 1 ¶ 1). Defendant Candy Young ("Young") was "the Director of the Title IX Office" at DSU. (D.I. 1 ¶ 2). Plaintiff alleges that Young "was responsible for participating in making, communicating, enforcing, and implementing all policies and practices at [DSU] with respect to Title IX, including insuring [DSU's] policies and procedures concerning Title IX comply with federal law." (*Id.*) Defendant Paula Duffy ("Duffy") is "the Director of the Office of Judicial

---

[1] The Report recommended granting the motion to dismiss with prejudice. The Court, however, is not entirely certain that Plaintiff cannot allege facts sufficient to survive a motion to dismiss pursuant to Rule 12(b)(6), and thus will grant the motion without prejudice.

Affairs at [DSU]." (*Id.* ¶ 3). Plaintiff alleges that Duffy is "responsible for overseeing the enforcement of [DSU] policies, regulations, and rules, including but not limited to compliance with the Student Code of Conduct, as well as implementing and overseeing any judicial proceedings relative to alleged violations of [DSU] policies, regulations, and rules and sanctions issued by the judicial body." (*Id.*). Defendant Randolph Johnson "is the Director of Bands" at DSU and "is responsible for overseeing all band activities at [DSU] including providing supervision, direction, and insuring the safety of all band participants." (*Id.* ¶ 4).

Plaintiff filed her Complaint on December 19, 2017, alleging gender discrimination in violation of Title IX (Count 1) and violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 (Count 2). (D.I. 1 ¶¶ 53-66). The allegations arise from an alleged sexual assault of Plaintiff by another DSU student on November 22, 2013 and the subsequent actions (or inactions) of the Defendants with respect to Plaintiff following that assault. The timeline of Plaintiff's allegations is as follows:

On November 22, 2013, Jason Faustin ("Faustin"), a fellow DSU male student, sexually assaulted Keel. (*Id.* ¶¶ 13-16). On or about November 25, 2013, Keel reported the assault to Dr. Brian Stark, a professor of criminology at DSU. (*Id.* ¶ 18). Thereafter, Keel was referred to Dr. Pauline Meek in DSU's counseling services department. (*Id.* ¶¶ 18-19). Despite Plaintiff "expressing her fear of encountering Faustin on campus," Dr. Meek arranged a meeting with Keel and Faustin "a couple of weeks" after the assault. (*Id.* ¶¶ 19-20). At the meeting, "Faustin apologized to Keel and agreed that he would no longer contact [her], including no longer touching or talking to her." (*Id.* ¶ 20).

Plaintiff continued to attend counseling sessions with Dr. Meek until February of 2015. (*Id.* ¶ 22). Plaintiff alleges that "during this time" Faustin continued "to repeatedly hug, touch,

and attempt to speak with, and otherwise contact [her] . . . ." (*Id.*). Faustin reportedly "hugged Keel at band practice on an almost daily basis, making Keel angry and uncomfortable." (*Id.*). Plaintiff reported this conduct to Dr. Meek. (*Id.*).

"On or about August 22, 2014, and again on or about February 4, 2015, Keel reported" the assault anonymously through "silent witness forms on the [DSU Police Department ("DSUPD")] website." (*Id.* ¶¶ 23-24). On or about February 5, 2015, Plaintiff "detailed the rape to DSUPD Sergeant Joi Simmons, including that she told Faustin 'no' and asked him to stop, but he continued to assault her." (*Id.* ¶ 24). Plaintiff provided additional information to Sergeant Simmons, including Faustin's "history of this behavior," the identity of "five additional women" who purportedly had similar experiences with Faustin and Plaintiff's "mental and emotional anguish." (*Id.*). "Later that day, Sergeant Simmons spoke with Faustin" who admitted that "Keel said stop several times and he did not stop." (*Id.*). DSUPD continued its investigation later in February of 2015 – including talking to "several female students" who reported similar experiences to Plaintiff's. (*Id.* ¶ 30). Ultimately, Faustin was arrested. (*Id.* ¶ 27).

After talking to Sergeant Simmons, Plaintiff "also spoke with Delaware State Title IX coordinator Candy Young." (*Id.* ¶ 26). Plaintiff alleges that she "detailed the rape and subsequent harassment she suffered to Ms. Young" and informed her of Plaintiff's "academic struggles and that she shared class with Faustin. Despite this, Ms. Young failed to offer accommodations to Keel. Further, despite agreeing to provide Keel with a no contact order, Ms. Young never followed through with enacting a no contact order." (*Id.* ¶ 26).

Eventually Faustin was arrested. After Faustin's arrest, Keel alleges that she suffered harassment from DSU students and employees. (*Id.* ¶¶ 27-28). This included students "making aggressive gestures and calling her derogatory names" and on one occasion threatening to push

3

her as she walked past. (*Id.*). With respect to DSU employees, Plaintiff alleges that as she "struggled with the ramifications of the sexual assault and the ongoing retaliatory behavior from other students, her attendance at band functions decreased. In response, Assistant Band Director Lenny Knight made harassing comments to Keel such as that he was tired of people who did not show up for band or who did not care because of 'bullshit' and 'drama.'" (*Id.* ¶ 28). Plaintiff alleges that Mr. Knight "berated" her for "making big things out of little things" and that he "ignored her concerns and made no attempt to stop the behavior." (*Id.*).

In March 2015, DSU "began a series of hearings to adjudicate whether Faustin was responsible for the sexual assault and rape of Keel." (*Id.* ¶ 33). "On or about March 31, 2015, the panel hearing the complaint found Faustin 'not responsible' for the sexual assault, rape, and harassment of Keel." (*Id.* ¶ 36). Thereafter, on April 2, 2015, Keel appealed this decision, and a new hearing was granted on April 14, 2015 based on a "lack of due process, i.e. when a student can show an error in the hearing or arbitrariness in the finding against the weight of the evidence." (*Id.*). On May 11, 2015, "a second panel found Faustin 'responsible' for the sexual assault and rape of Keel" and suspended him for "a minimum of one (1) academic year – specifically 2015-2016." (*Id.* ¶ 37). In doing so, the panel stated:

> Having been found responsible for the sexual assault and rape of the complainant, the respondent is in violation of the General Standards of Conduct and Decorum and has exhibited violent behavior by sexually assaulting and raping the complainant. (Delaware State University, Division of Student Affairs Student Judicial Handbook, p. 5) Furthermore, the complainant has a right to continue her education and feel as though she is matriculating in a safe and secure academic environment. The complainant is now a senior. Removing the respondent for at least the 2015-2016 academic year will provide the complainant with the opportunity to do so.

(*Id.* ¶ 38).[2] Plaintiff alleges that she was also informed that "Faustin would not be allowed on campus, but assured . . . that if he were to come on campus, she would be informed and provided a police escort." (D.I. 1 ¶ 39).

Plaintiff alleges that "[i]n or about September of 2015, [DSU] allowed Faustin back on campus." (*Id.* ¶ 40). Specifically, she alleges that she entered her advisor's office and she came into "direct contact" with Faustin who was seated in the faculty member's office. (*Id.*) There is no allegation that the two were ever alone or unsupervised. Nor is there any allegation that DSU or any of the named Defendants had expected Keel would visit the office that day or that other security measures were not in place. Keel alleges, on information and belief, that Faustin "was allowed on the [DSU] campus" on "multiple occasions," though there are no allegations that she ever saw him again, nor are there allegations regarding the time frame during which he was purportedly on campus. (*Id.* ¶ 41).

Keel graduated from DSU on December 21, 2015. (*Id.* ¶ 44). The following semester, DSU readmitted Faustin earlier than the time originally set based on the condition that he "abide by the Student Code of Conduct," and noting his prior unacceptable behavior. (*Id.* ¶ 46).

## II. <u>LEGAL STANDARDS</u>

### A. <u>Motion to Dismiss for Failure to State a Claim</u>

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "To survive a motion

---

[2] Plaintiff quotes from documents in her Complaint but did not attach those documents to the Complaint.

to dismiss, [however,] a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

  B. <u>Statute of Limitations</u>

  The statute of limitations for a cause of action under Title IX is subject to the pertinent state's statute of limitations for personal injuries. *See Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 77-78 (3d Cir. 1989). The statute of limitations for filing a cause of action under 42 U.S.C. § 1983 is also the relevant state's statute of limitations governing causes of action for personal injuries. *See Wilson v. Garcia*, 471 U.S. 261, 276-78 (1985); *accord Sameric Corp. of Delaware, Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998).

6

Delaware's statute of limitations for personal injury claims is two years. *See* 10 Del. C. § 8119. Thus, Keel's Title IX claims and her § 1983 claims are subject to a two-year statute of limitations. *See Lamb-Bowman v. Delaware State Univ.*, C.A. No. 98-658 MMS, 1999 WL 1250889, at *8-9 (D. Del. Dec. 10, 1999); *see also Smith v. Delaware*, 236 F. Supp. 3d 882, 888 (D. Del. 2017) ("In Delaware, § 1983 claims are subject to a two-year limitations period." (internal citations omitted)). Section 1983 claims accrue "when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric,* 142 F.3d at 599.

The statute of limitations is an affirmative defense that a defendant must usually plead in his answer. *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). Nevertheless, the Third Circuit "permit[s] a limitations defense to be raised by a motion under Rule 12(b)(6) . . . if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (internal quotation marks omitted). Thus, "a district court may grant a motion under Rule 12(b)(6) raising a limitations defense if 'the face of the complaint demonstrates that the plaintiff's claims are untimely." *Id.* (citing *Schmidt*, 770 F.3d at 249 (internal quotations omitted)).

## III. DISCUSSION

### A. Statute of Limitations

There is no dispute that the statute of limitations for Title IX and § 1983 actions in Delaware is two years – making the relevant date in this case December 19, 2015. The dispute is whether Plaintiff's claims fit within the continuing-violation doctrine, which is generally recognized under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, to provide that discriminatory acts that are not individually actionable may be aggregated to make out a hostile environment claim. *Doe v. Mercy Catholic Med Ctr.,* 850 F.3d 545, 566 (3d Cir. 2017)

7

(citing *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013)).[3] These acts can occur at any time if they are linked in a pattern of actions continuing into the limitations period. *Id.* All alleged acts, however, must be part of the same unlawful practice, meaning they involved "similar conduct by the same individuals, suggesting a persistent, ongoing pattern." *Id.*

The continuing-violation doctrine "is an 'equitable exception to the timely filing requirement.'" *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995)). Under the doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 481 (3d Cir. 2014) (quoting *Cowell*, 263 F.3d at 292).[4] "[T]he court will grant relief for the earlier related acts that would otherwise be time barred." *Cowell*, 263 F.3d at 292. The doctrine, however, focuses on "continual unlawful acts, not continual ill effects from an original violation." *Weis–Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005) (quoting *Cowell*, 263 F.3d at 293). Only defendants' "affirmative acts" count. *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 235 (3d Cir. 2014) (quoting *Cowell*, 263 F.3d at 293). "[A] government official's refusal to undo or correct [a] harm [caused by the official's unlawful conduct] is not an affirmative act for purposes of establishing a continuing violation." *Tearpock-Martini*, at 236 n. 8.

---

[3] As the Report noted, it is an "open question" in the Third Circuit whether this doctrine applies under Title IX. (*See* D.I. 19 at 6) (quoting *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 566 (3d Cir. 2017)). Even were the Court to apply it, however, as discussed above, Keel's claims – as alleged – are time barred.

[4] The continuing-violation doctrine "creates a 'narrow' and 'equitable exception to the timely filing requirement.'" *Gould v. Borough*, 615 F. App'x 112, 116 (3d Cir. 2015).

Plaintiff objects to the Report and asserts that "[a] genuine issue of material fact exists as to whether Plaintiff's Title IX claim accrued on December 21, 2015, when she graduated from DSU, and she was no longer exposed to a sexually hostile environment." (D.I. 20 at 2). As the Report found, however, Plaintiff's claims involve no allegations of wrongdoing within the limitations period. Indeed, the acts alleged to show "deliberate indifference" supporting Plaintiff's Title IX and § 1983 claims occurred – and ended – before September 2015 and are thus untimely. Specifically, Plaintiff alleges that DSU:

- "[Engaged] in an unjustifiable delay in investigating and adjudicating Keel's reports of rape and ongoing harassment;"

- "[Came] to an initial, erroneous outcome when adjudicating Plaintiff's report;"

- "[Engaged] in a biased and inequitable investigation and adjudicatory process;

- "[Failed] to implement and enforce reasonable interim measures for Keel's protection;" and

- "[Failed] to comply with federal requirements for responding to instances of sexual misconduct."

(D.I. 14 at 9-15, D.I. 20 at 5-6). All of those complaints ended on May 11, 2015 when Faustin was found responsible and suspended by DSU. (D.I. 1 ¶ 37). As to later events, in Plaintiff's objections and the underlying allegations cited in the Complaint, the only date[5] mentioned regarding the statute of limitations issue is September of 2015:

> After the issuance of this sanctioning document, Keel did not experience a "safe and secure academic environment" because Faustin was allowed to come back to campus, and was actually on campus multiple times. (D.I. 1 at ¶¶ 40-41.) Keel actually encountered Faustin in September of 2015 in an academic building on campus, while he was supposed to be suspended. (*Id.* ¶ 40.) Keel was not informed that Faustin would be on campus, nor was she provided a police escort, as was required by DSU's sanction. (*Id.*) Further, Faustin continued to be allowed on campus during his suspension. (*Id.* ¶ 41.) She was similarly never informed of his

---

[5] The Complaint asserts that Faustin was readmitted in January of 2016, after Plaintiff graduated, but that date is not addressed in Plaintiff's objections.

9

>continued presence on campus, nor provided a police escort as required. (*Id.*) In an attempt to get DSU to abide by its sanctioning requirements, and secure a safe academic environment for herself free from potential exposure to her supposedly suspended rapist, Keel reported Faustin's presence on campus during his suspension to both DSU's Title IX office and Judicial Affairs office. (*Id.* ¶ 42.) Neither office took responsibility for enforcing the sanctioning requirements and ensuring that Faustin would not be on campus, or if he was, ensuring that Plaintiff would be informed and provided a police escort. (*Id.*) Unsatisfied, Keel reported these violations to DSU's Police Sergeant Simmons, who similarly failed to offer to enforce the sanctioning requirements. (*Id.* ¶ 43.)

(D.I 20 at 4).

Plaintiff asserts that "Keel was forced to endure a circumstance in which she could encounter the man that raped her, and continued to harass her after the rape, on campus at any time. Accordingly, Keel took it upon herself to avoid areas of campus and lock herself in her room to keep herself safe." (D.I. 20 at 4 (citing D.I. 1 ¶ 44)). This is tantamount to alleging that she continued to suffer ill effects of the alleged earlier wrongdoing. As noted above, a "continuing violation is occasioned by continual unlawful acts [however], not continual ill effects from an original violation." *Cowell*, 263 F.3d at 293 (internal quotation marks and citation omitted); *see also Chestang v. Alcorn State Univ.*, 940 F. Supp. 2d 424, 430 (S.D. Miss. 2013) ("[T]he continuing tort doctrine 'does not apply when a plaintiff simply alleges that harm reverberates from one wrongful act or omission.'" (quoting *Walker v. Epps*, 550 F.3d 407, 417 (5th Cir. 2008)). Here, there is no allegation that Faustin returned to campus during the limitations period, or that Defendants engaged in any acts during the limitations period. Thus, as currently alleged, Plaintiff's claims are time-barred.

### B. Plaintiff's Title IX Claim

The Report correctly sets out the law regarding claims brought under Title IX. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education

program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A public-school student may bring suit against a school under Title IX for student-on-student sexual harassment, "but only where the [school] acts with deliberate indifference to known acts of harassment in its programs or activities" and "only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd of Educ.*, 526 U.S. 629, 633 (1999).

Deliberate indifference requires a response (or failure to respond) that is "clearly unreasonable in light of the known circumstances." *Id* at 648; *see also Mercy Catholic Med Ctr.*, 850 F.3d at 566. To establish deliberate indifference, a plaintiff must show that the school knew about the plaintiff's sexual assault and ensuing harassment and failed to respond adequately. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1989) ("[W]e hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond."); *see also Terrell v. Delaware State Univ.*, C.A. No. 09-464 (GMS), 2010 WL 2952221, at *2 (D. Del. July 23, 2010).[6] "To establish deliberate indifference, a plaintiff must show that the school made an official decision not to remedy the sexual harassment." *Terrell*, 2010 WL 2952221, at *2 (citing *Gebser*, 524 U.S. at 290).

"Deliberate indifference claims impose a significant burden on the plaintiff and consequently rarely proceed beyond a motion to dismiss." *Saravanan v. Drexel Univ.*, 2017 WL

---

[6] The required showing is purposefully high "to eliminate any 'risk that [a recipient of federal funds] would be liable in damages not for its own official decision but instead for its employees' independent actions.'" *Davis*, 526 U.S. at 643 (quoting *Gebser*, 524 U.S. at 290-91).

11

5659821, at *7 (E.D. Pa. Nov. 24, 2017); *see also T.B. v. New Kensington-Arnold Sch. Dist.*, 2016 WL 6879569, at *7 (W.D. Pa. Nov. 22, 2016) ("The deliberate indifference standard sets a high bar for a plaintiff seeking to recover under Title IX.")

As noted above (*see supra* § III.A), Plaintiff asserts that "deliberate indifference" as to her assault has been alleged in the form of DSU's "unjustifiable delay in investigating and adjudicating" her complaints; its initially "coming to an [], erroneous outcome;" its "biased and inequitable investigation and adjudicatory process;" its "failing to implement and enforce interim measures" and its "failing to comply with federal requirements for responding to instances of sexual misconduct." (D.I. 14 at 8-15, D.I. 20 at 5-6). Plaintiff objects that the Report "did not directly address Plaintiff's theories of deliberate indifference, and their legal bases" and simply "concluded that these actions, 'fail to amount to a showing that 'an official decision' was made 'not to remedy the violation.'" (D.I. 20 at 7 (quoting D.I. 19 at 9)). As an initial matter, the Court agrees with the Report that the allegations in the Complaint do not allege or amount to an allegation that an "official decision" was made not to remedy the violation and, thus, the allegations are legally insufficient. (D.I. 19 at 9). As is clear from the Complaint, DSU did act on Plaintiff's claims regarding her assault. DSUPD conducted a criminal investigation of Plaintiff's claims, which resulted in Faustin's arrest. DSU's Title IX office conducted an investigation and held disciplinary hearings, which, though initially unavailing, ultimately resulted in the removal of Faustin from DSU for the remainder of Plaintiff's tenure at DSU. Plaintiff was also offered counseling services, which she accepted and in which she participated. Although DSU's process was not perfect, and Plaintiff may have hoped DSU could have done more, that is not the standard under Title IX.

Similarly, with respect to Plaintiff's allegations of harassment and retaliation from Faustin, members of the DSU band and a DSU employee (D.I. 1 ¶¶ 27-28), "schools are not required to 'remedy' harassment or to conform their students' behavior to a certain manner of conduct. Instead, as the Supreme Court has made clear, the effectiveness of a [school's] methods is not a factor considered in the Title IX analysis and ineffectiveness is not dispositive of Title IX liability." *P.K. ex rel. Hassinger v. Caesar Rodney High School*, C.A. No. 10-783 (GMS), 2012 WL 253439 at *9 (D. Del. Jan. 27, 2012) (citing *Davis*, 526 U.S. at 648-49 ("[schools] are not required to 'remedy' the harassment or 'purg[e] their schools of actionable peer harassment' to avoid Title IX liability")). Thus, these allegations are not supported by any authority that would establish an actionable claim under Title IX.

Moreover, the Court notes that in opposing Defendants' motion (D.I. 14), Plaintiff relied on numerous allegations that were not included in her Complaint. Without addressing whether those allegations would be sufficient to plead a Title IX claim (or to overcome the statute of limitations), the Court notes that it cannot consider unsupported and conclusory allegations in briefs that were not in the pleadings. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

### C. Plaintiff's Section 1983 Claim

Plaintiff objects to dismissal of her §1983 claim for violation of the Equal Protection clause, asserting that "Plaintiff's allegations raise a question of fact as to whether the named individual Defendants acted with deliberate indifference." (D.I. 20 at 7-8). "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another

individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman ex rel. Sherizer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citing *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000)). As the Report makes clear (D.I. 19 at 9-10), to bring a successful Section 1983 claim for the denial of Equal Protection, "plaintiffs must prove the existence of purposeful discrimination." *Shuman*, 422 F.3d at 151 (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990) (citing *Batson v. Kentucky*, 476 U.S. 79, 93 (1986)). "In other words, they must demonstrate that they received different treatment from that received by other individuals similarly situated." *Id.* (citing *Andrews*, 895 F.2d at 1478; *Kuhar v. Greensburg-Salem Sch. Dist.*, 616 F.2d 676, 677 n.1 (3d Cir. 1980)). Specifically, for a claim of sexual discrimination, a plaintiff must show that any disparate treatment was based upon his or her gender. *Id.* (citing *Bohen v. City of East Chicago*, 799 F.2d 1180, 1186-87 (7th Cir. 1986)).

Here, as the Report recognized, Plaintiff "has failed to allege purposeful disparate treatment and discrimination based on gender" and "fails to address how she was arguably treated differently from others similarly situated." (D.I. 19 at 11). Plaintiff does not address either of these failures in her objections. Rather, the objections simply repeat Plaintiff's allegations that the named Defendants acted with deliberate indifference without alleging why or how or explaining how their treatment of Plaintiff differed from those similarly situated. Specifically, Plaintiff asserts:

> With respect to Defendant Candy Young, DSU's Title IX Coordinator, Keel alleged that Young, (1) failed to offer any accommodations, including a no-contact order, to Keel after Keel reported her rape and ongoing harassment by Faustin and others (D.I. 1, ¶ 26); and (2) failed to enforce the sanctioning requirements that Keel be informed when Faustin would be back on campus, and be provided a police escort when Faustin was back on campus, when Keel reported that Faustin was actually on campus several times despite being suspended. (*Id.* ¶ 42.)

14

> With respect to Defendant Paula Duffy, DSU's Director of the Office of Judicial Affairs, similarly failed to enforce the aforementioned sanctioning requirements when Keel reported to her that Faustin was actually on campus several times despite his suspension. (*Id.*) Finally, with respect to Defendant Randolph Johnson, DSU's Director of Bands, Keel alleged that Johnson retaliated against Keel for reporting her rape and ongoing harassment (*Id.* ¶ 32.)

(D.I. 20 at 8). These general statements and the underlying allegations in the Complaint on which they are based are insufficient to state an Equal Protection claim. *See, e.g.*, *Black v. Coupe*, C.A. No. 14-214 (RGA), 2015 WL 1737433, at *2 (D. Del. Apr. 10, 2015) ("A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations.").

### D. Qualified Immunity

Plaintiff objects to the Report's determination that the individual defendants – Ms. Young, Ms. Duffy, and Mr. Johnson – are immune from suit because of qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (internal quotation marks omitted); *see also George v. Rehiel,* 738 F.3d 562, 572 (3d Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[T]he question is whether a reasonable public official would know that his or her specific conduct violated clearly established rights." *Grant v. City of Pittsburgh*, 98 F.3d 116, 121 (3d Cir. 1996). Qualified immunity, thus, protects government officials from liability for "mere mistakes in judgment, whether the mistake is one of fact or one of law." *Butz v. Economou*, 438 U.S. 478, 479 (1978). Indeed, properly applied, the doctrine protects "all but

15

the plainly incompetent or those who knowingly violate the law." *George v. Rehiel*, 738 F.3d at 572 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In addressing qualified immunity, the Court must first determine whether the facts alleged in the Complaint show the violation of a constitutional right, and, if so, the Court must then determine whether that right was clearly established at the time of the alleged violation. *See Torisky v. Schweiker*, 446 F.3d 438, 442-43 (3d Cir. 2006).

Plaintiff objects to the Report's recommendation as to qualified immunity on two grounds: (1) "Keel has alleged facts that establish the violation of her right to equal protection by virtue of the individual Defendants' deliberate indifference to her report of rape and ongoing harassment" and (2) "the right to be free from gender based discrimination, in the form of freedom from a sexually hostile environment, was clearly established at the time of the violation." (D.I. 20 at 8-9).

Plaintiff, in her objections, asserts that "the right to be free from gender based discrimination . . . was clearly established at the time of the violation." (D.I. 20 at 9). Plaintiff, however, fails to provide any basis or justification as to how or why this statement is supported by any facts pleaded in her Complaint. Indeed, as the Court has already found, Plaintiff has failed to allege violation of her Equal Protection rights (*see supra* § III.C) or to allege facts of disparate treatment, let alone disparate treatment based upon her gender to support a claim of gender-based discrimination.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court OVERRULES Plaintiff's objections (D.I. 20) and ADOPTS the Report and Recommendation (D.I. 19), and Defendants' motion to dismiss (D.I. 10) is GRANTED.