**UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| MAI-AJAH KEEL; <br><br> Plaintiff, <br><br> v. <br><br> DELAWARE STATE UNIVERSITY BOARD OF TRUSTEES; CANDY YOUNG, in her individual capacity; PAULA DUFFY, in her individual capacity; and RANDOLPH JOHNSON, in his individual capacity <br><br> Defendants. | Case No.: 17-cv-01818-MN |

**COMPLAINT AND JURY DEMAND**

Plaintiff Mai-Ajah Keel, through her attorneys, submits this Complaint and states the following:

**PARTIES AND JURISDICTION**

1. Defendant Delaware State University Board of Trustees ("Trustees") is the official governing body of Delaware State University ("Delaware State") and is charged with operating and governing Delaware State, a public university located in Dover, Delaware.

2. Defendant Candy Young was at all times relevant, the Director of the Title IX Office at Delaware State. Plaintiff is informed and believes and thereon alleges that as the Director of the Title IX Office, Defendant Candy Young was responsible for participating in making, communicating, enforcing and implementing all policies and practices at Delaware State with respect to Title IX, including insuring Delaware State's policies and procedures concerning Title IX comply with federal law.

3. Defendant Paula Duffy is, and was at all times relevant, the Director of the Office of

1

Judicial Affairs at Delaware State. Plaintiff is informed and believes and thereon alleges that as the Director of the Office of Judicial Affairs, Defendant Paula Duffy is responsible for overseeing the enforcement of Delaware State policies, regulations, and rules, including but not limited to compliance with the Student Code of Conduct, as well as implementing and overseeing any judicial proceedings relative to alleged violations of Delaware State policies, regulations, and rules and sanctions issued by the judicial body.

4. Defendant Randolph Johnson is, and was at all times relevant, the Director of Bands at Delaware State. Plaintiff is informed and believes and thereon alleges that as the Director of Bands at Delaware State, Defendant Randolph Johnson is responsible for overseeing all band activities at Delaware State including providing supervision, direction, and insuring the safety of all band participants.

5. Plaintiff Mai-ajah Keel ("Keel") was, at all times relevant, a student at Delaware State.

6. Delaware State receives federal financial assistance and is therefore subject to the dictates of 20 U.S.C. § 1681. ("Title IX")

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

8. Venue in this Court is proper under 28 U.S.C. § 1391 (b) because the events giving rise to this claim took place in this judicial district, and Defendants reside in this judicial district.

**Background Facts Related to Plaintiff Mai-ajah Keel**

9. Keel enrolled at Delaware State in the fall of 2011 as an 18-year-old freshman.

10. Delaware State awarded Keel a scholarship to participate in the Delaware State marching band, where she became acquainted with fellow Delaware State student and marching band member, Jason Faustin ("Faustin").

11. Faustin served in a leadership role within the marching band, as well as a Residential Assistant and Junior Class President for Delaware State.

12. Beginning in September of 2012, Faustin began pursuing Keel sexually. Faustin regularly

engaged in harassing behavior towards Keel. He made sexually aggressive and offensive statements such as "I want to eat you out," oftentimes at a whisper. Keel repeatedly expressed to Faustin that she was not interested in him and that she only wished to be friends, yet Faustin's sexual advances persisted.

13. On or about the evening of Friday, November 22, 2013, the Delaware State marching band completed a performance and Keel visited Faustin's residence at a residential dorm on the Delaware State campus along with two other band members at Faustin's insistence. Faustin provided alcoholic beverages to Keel and the other two band members.

14. After approximately an hour and a half, Faustin indicated he needed to go to the front desk of the residential dorm to begin his shift as Residential Assistant. Keel intended to leave with her other two friends. However, Faustin insisted that Keel remain behind for a couple of minutes ostensibly so he could apologize for his previous sexually aggressive behavior. The two other band members left Faustin's residence to pick up another friend, intending to return to pick up Keel.

15. After her friends left, Keel accompanied Faustin down to the residential dorm front desk, where Faustin apologized for his previous behavior. Faustin then ordered pizza and went to the main entrance to get it. Keel decided she wanted to go home to sleep as the band had another performance the following day and called her friends and told them they no longer needed to pick her up as she was going home. When Faustin returned, he shared the pizza with Keel and she informed him she was leaving but needed to retrieve some personal items she inadvertently left in his dorm room.

16. Once Keel was back in Faustin's dorm room, Faustin came in and surprised Keel. He forcefully pinned Keel down, started ripping her clothes off and began to sexually assault her. Keel repeatedly said "no" and told Faustin to stop He did not stop. Eventually, Keel was able to kick him off her, grab her personal items, and run out the door.

17. In the days following the incident, Keel informed another band member and mutual friend of her and Faustin about the sexual assault. In response, the friend informed Keel that

Faustin had a problem and this was not the first time he had done something like this.

18. The following Monday, Keel reported the sexual assault to Dr. Brian Stark, a professor of criminology at Delaware State. Keel described her sexual assault to Dr. Stark, who referred Keel to Dr. Kylee Parrotta, an assistant professor in the sociology and criminal justice department at Delaware State. Keel again described her sexual assault to Dr. Parrotta, who in turn referred her to Dr. Pauline Meek in the counseling services department at Delaware State.

19. Upon meeting with Dr. Meek, Keel informed her of the sexual assault as well as expressing her fear of encountering Faustin on campus.

20. Delaware State failed to proceed with proper Title IX investigative and adjudicative procedures and instead wrongly facilitated mediation between Faustin and Keel. A couple of weeks after the sexual assault, Keel and Faustin met with Dr. Meek. At this meeting, Faustin apologized to Keel and agreed that he would no longer contact Keel, including no longer touching or talking to her. Dr. Meek took no further action.

21. Delaware State wrongly ignored and otherwise failed to respond to Keel's allegations of sexual assault in a timely manner. In addition to the previously mentioned Delaware State professors and administrators, Keel informed the Delaware State band director, Randolph Johnson, of the sexual assault via email on multiple occasions. In response, Mr. Johnson informed Keel that Delaware State lawyers instructed him not to respond to her.

22. Delaware State failed to respond appropriately to reports of ongoing harassment. Keel continued to attend counseling with Dr. Meek until February 2015. During this time, Faustin continued to repeatedly hug, touch, and attempt to speak with, and otherwise contact Keel despite his promises to stop. Faustin hugged Keel at band practice on an almost daily basis, making Keel angry and uncomfortable. Keel repeatedly informed Dr. Meek of Faustin's inappropriate and unwelcomed advances.

23. Because Delaware State failed to timely investigate her allegations of sexual assault and wholly ignored her reports of ongoing harassment, Keel was left vulnerable and in fear.

She turned to the Delaware State University Police Department (DSUPD). On or about August 22, 2014 and again on or about February 4, 2015, Keel reported the rape through silent witness forms on the DSUPD website. Both entries were received by DSUPD. Both reports referenced the sexual assault that occurred on the Delaware State campus. Both reports identified "J. Faustin" as the perpetrator, as well as Faustin's positions as both a Residential Advisor and Junior Class President. Keel is informed and believes and on the basis alleges that, despite a report as early as August 2014, DSUPD did not initiate an investigation until after the February 4th, 2015 silent witness report.

24. Keel provided a detailed account to DSUPD of the injury perpetrated upon her by Faustin and his danger to students on campus. On or about February 5, 2015, Keel detailed the rape to DSUPD Sergeant Joi Simmons, including that she told Faustin "no" and asked him to stop, but he continued to assault her. Keel advised Sergeant Simmons that Faustin has a history of this behavior and identified five additional women who shared with her that they had similar experiences with Faustin. Keel also informed Sergeant Simmons that she had suffered both mental and emotional anguish since the sexual assault. Later that day, Sergeant Simmons spoke with Faustin. Sergeant Simmons informed Faustin the interview was in reference to a report of questionable sexual behavior, specifically rape. When asked if he was aware of what Sergeant Simmons was referencing, Faustin indicated there was an incident in November 2013 with a friend who he later identified to Sergeant Simmons as Keel. Faustin then voluntarily confessed to raping Keel. Faustin admitted to Sergeant Simmons that Keel said stop several times and he did not stop. Faustin acknowledged to Sergeant Simmons that he knew what he did was wrong and he always knew that there was a possibility he could be arrested for it. This information, including Faustin's confession, was reported to the Delaware State Title IX office on February 6, 2015 at the latest. On or about February 19, 2015, Keel provided additional detail to DSUPD through a victim statement, which was memorialized in a report. Per the report, Keel indicated: "RA (J. Faustin) sexually assaulted me during the month of November 2013 [sic] it's unfortunate

that as a student residing on campus I have to encounter this predator every day. His known tactics of providing females with alcoholic beverages and then stripping them of their clothing has haunted me and a few others for some time." Keel also indicated: "Even with counseling I freeze up and ignite with anger every single time his name is mentioned, [sic] he walks in a room and when he awkwardly (and publicly) "hugs" me, I hate it. I understand people make mistakes, but I am not the first, nor am I the last person he has traumatized."

25. During the DSUPD investigation, Keel reported her concern that she had to interact with Faustin daily, that she continued to feel harassed by Faustin, and that her grades suffered. Keel shared a class with Faustin in which her grade dropped from a 90 to a 45.

26. After speaking with Sergeant Simmons, Keel also spoke with Delaware State Title IX coordinator Candy Young. Keel detailed the rape and subsequent harassment she suffered to Ms. Young. She also informed Ms. Young of her academic struggles and that she shared class with Faustin. Despite this, Ms. Young failed to offer accommodations to Keel. Further, despite agreeing to provide Keel with a no contact order, Ms. Young never followed through with enacting a no contact order.

27. Delaware State failed to respond appropriately to Keel's reports of ongoing harassment. The investigation eventually resulted in Faustin's arrest. After the arrest, several of Faustin's friends repeatedly subjected Keel to ongoing harassment and retaliation; including making aggressive gestures and calling her derogatory names such as "hoe" and "bitch." On one occasion near the band room, Keel overheard a band member encouraging other band members to push Keel when she walked past them. This band member then attempted to engage Keel in a physical altercation. Keel informed Delaware State of the ongoing harassment, yet Delaware State did nothing in response to protect Keel or stop the harassing behavior.

28. Delaware State employees also subjected Keel to harassment and retaliation. As Keel struggled with the ramifications of the sexual assault and the ongoing retaliatory behavior

6

from other students, her attendance at band functions decreased. In response, Assistant Band Director Lenny Knight made harassing comments to Keel such as that he was tired of people who did not show up for band or who did not care because of "bullshit" and "drama." Mr. Knight berated Keel for "making big things out of little things." When Keel informed Mr. Knight about the harassing behavior of the other students, he ignored her concerns and made no attempt to stop the behavior.

29. Delaware State failed to provide reasonable accommodations to Keel and made no effort to take any interim measures to remedy the effects of the harassment. As a result, Keel suffered both academic and economic consequences. Keel continued to struggle academically and saw a substantial drop in her grades making any hope of graduating cum laude, a previously achievable goal, not possible. Keel also lost her scholarship. Keel stopped attending band functions regularly and was unable to join a sorority on campus. Keel turned to drugs and alcohol as a coping mechanism and used both at a substantially higher rate than before the sexual assault. Through Delaware State's investigation, prior to any adjudication hearings, DSUPD spoke to several other female students who indicated Faustin also engaged in inappropriate and unwelcome sexual conduct with them while they were students at Delaware State.

30. Between approximately February 16, 2015 and February 20, 2015, DSUPD spoke with several female students, other than Keel, who reported that Faustin had sexually assaulted them, describing facts similar to Keel's report of rape. This included at least three women who reported that Faustin either attempted to or actually engaged in sexual intercourse with them despite repeatedly telling him that they did not consent to sex. Each report described Faustin as persisting in his attempts to engage in sexual intercourse after they would tell him "no," requiring some to have to push him off and flee. DSUPD also learned during this time that Faustin kept a library of pictures on his computer of women engaging in sex acts with him who either did not know or otherwise did not consent to their pictures being taken.

7

31. DSUPD also learned during these interviews that Faustin had a reputation, known to several of the victims and others, of engaging in similar conduct with other women. Faustin was known to provide alcohol to women and persistently push them into sexual intercourse. Then, after the fact, Faustin would be very cordial and apologetic for his actions. Through these interviews, DSUPD was also informed that at least one victim was fearful of reporting Faustin as she had seen Keel experience a great deal of backlash and retaliation from others as a result of coming forward.

32. After interviewing various witnesses and victims concerning Faustin's conduct at Delaware State, Sergeant Simmons reported great concern about the Delaware State campus environment, which Simmons felt influenced victims to refrain from cooperation with law enforcement. She shared this concern with Delaware State administration, citing retaliation experienced by Keel from the marching band, including Mr. Johnson, as evidence of the hostile environment that existed on the campus.

33. Delaware State failed to provide an equitable and impartial adjudication process. In March of 2015, Delaware State began a series of hearings to adjudicate whether Faustin was responsible for the sexual assault and rape of Keel. One of the deciding members of the panel was Faustin's former employer, which presented a conflict of interest.

34. Also, Keel was not allowed to attend all of the hearings. Several of the hearings were scheduled during convenient times for Faustin, but during inconvenient times for Keel as she had exams, requiring her to miss certain hearings or parts of certain hearings. Keel repeatedly informed Delaware State that hearings were set during exams such as midterms and finals, however, scheduling accommodation was not made for Keel. Keel also missed other portions of hearings either due to Delaware State failing to provide her notice or because she was not allowed in the room during certain portions of hearings.

35. In addition, both parties were not given equal opportunity to hear all aspects of the case and ask questions. While Faustin heard all of Keel's statements, Keel was not permitted to hear all of Faustin's statements. Also, Keel requested representation and/or advocacy at

every hearing but did not receive any; in contrast, Faustin had representation throughout the entire process by a Delaware State professor and lawyer.

36. Delaware State failed to implement proper training relating to the investigation and adjudication of Title IX claims. The panel tasked with adjudicating the complaint against Faustin appeared unprepared and asked inappropriate questions. The panel was not presented with evidence of Faustin's confession to the rape despite Delaware State being aware, prior to the beginning of the adjudication hearings, not only of Faustin's confession, but also the reports of at least three other sexual assault victims of Faustin's. Delaware State failed to come to a reasonably prompt resolution of Keel's complaint. On or about March 31, 2015, the panel hearing the complaint found Faustin "not responsible" for the sexual assault, rape, and harassment of Keel. On or about April 2, 2015, Keel appealed this decision based on various procedural and substantive deficiencies including the failure to consider Faustin's confession to the rape. Keel's appeal and request for new hearing was granted on or about April 14, 2015 based on a "lack of due process, i.e. when a student can show an error in the hearing or arbitrariness in the finding against the weight of the evidence."

37. On or about May 11, 2015, a second panel found Faustin "responsible" for the sexual assault and rape of Keel. In its rationale, Delaware State indicated that, at the hearing, Faustin again admitted he heard Keel say "no" and "stop" more than once during the incident. As a result, Delaware State sanctioned Faustin by suspending him for "a minimum of one (1) academic year—specifically, 2015-2016."

38. In its rationale supporting the sanction, Delaware State indicated the following: "Having been found responsible for the sexual assault and rape of the complainant, the respondent is in violation of the General Standards of Conduct and Decorum and has exhibited violent behavior by sexually assaulting and raping the complainant. (Delaware State University, Division of Student Affairs Student Judicial Handbook, p. 5) Furthermore, the complainant has a right to continue her education and feel as though she is matriculating in a safe and

secure academic environment. The complainant is now a senior. Removing the respondent for at least the 2015-2016 academic year will provide the complainant with the opportunity to do so."

39. Delaware State informed Keel that Faustin would not be allowed on campus, but assured her that if he were to come on campus, she would be informed and provided a police escort.

40. Despite Delaware State's finding that Faustin had exhibited violent behavior, and despite being aware of multiple reports of sexual assault by Faustin from multiple victims, Delaware State failed to follow through with its sanction, further subjecting Keel to a hostile environment. In or about September of 2015, Delaware State allowed Faustin back on campus, Keel visited a building on campus where she regularly had class. She walked into her advisor's office where she came into direct contact with Faustin who was sitting in the faculty member's office as well. This unexpected contact caused Keel great shock and fear. Delaware State did not inform Keel of Faustin's presence on campus, advise her of any change to his sanction which would have permitted him to be on campus, or offer any security measures to ensure her safety as promised.

41. In violation of his purported suspension, Faustin was on campus that day, in the professor's office, to take a final exam. This clearly violated the terms of the sanction, by allowing Faustin to continue his coursework at Delaware State while purportedly being suspended.

42. In fact, Keel is informed and believes and on that basis alleges that Faustin was allowed to continue taking one or two classes up until the end of the semester on December 21, 2015. Keel is further informed, believes and on that basis alleges that Faustin was routinely, physically on campus in connection with his continued coursework, despite his purported suspension, up until December 21, 2015. Keel was never informed that Faustin was allowed to continue his studies on camps, in violation of his sanction of suspension, nor was she ever provided a police escort, also in violation of Delaware State's sanction.

43. Faustin was also often seen on campus by Keel's friends during the Fall semester of 2015. On each occasion that one of Keel's friends saw Faustin on campus, Keel's friends called

Keel to inform her of his presence on campus, and exactly where he was on campus, so that she was able to take her safety in her own hands and avoid the areas of campus where Faustin was seen.

44. In violation of Delaware State's sanction, at no time was Keel informed when Faustin would be on campus, nor was she ever provided a police escort while Faustin was on campus.

45. In response to Faustin's continued presence on campus, Keel confronted both the Delaware State Title IX office and the Judicial Affairs office regarding Delaware State's failure to adequately enforce its findings regarding the sexual assault and rape of Keel and its failure to adequately protect Keel. Each office denied responsibility and instructed Keel to address the issue with the other office. Paula Duffy, the Director of the Office of Student Judicial Affairs, informed Keel via email, "We apologize that you felt uncomfortable and that you were unaware of Mr. Faustin's presents [sic] on campus yesterday afternoon. As The Office of Judicial Affairs does not manage Title IX cases any longer, we too were unaware that he was due to be on campus yesterday. The Office of Title IX, under Ms. Candy Young overseas [sic] all Title IX cases. As we informed you yesterday when you came to our office seeking clarity, the best place to gain a better understanding is with the Title IX Office directly. Again, we apologize for any trouble this may have caused and I will forward your email to the Office of Title IX immediately." Similarly, Ms. Young denied responsibility, telling Keel in-person that the Judicial Affairs office was in charge of the arrangement with Faustin.

46. Keel also informed Sergeant Simmons and Dr. Dorothy Dillard, chair and associate professor with Delaware State's Department of Sociology and Criminal Justice, who, while acknowledging that "the process is flawed and problematic," offered no solution. Delaware State failed to follow up any further with Keel regarding this incident.

47. Delaware State's failure to enforce the sanction imposed on Faustin coupled with its refusal to acknowledge responsibility for taking measures to protect Keel, subjected her to an even

greater hostile environment resulting in further loss of educational opportunity. Due to her ongoing fear for her safety and due to the increasingly hostile environment she faced at Delaware State, Keel isolated herself, locking herself in her room regularly and refusing to go to different areas of campus. Keel was constantly exposed to this sexually hostile environment until she graduated and left Delaware State on December 21, 2015.

48. After failing several classes due to the emotional impact of the assault and Delaware State's deliberate indifference, Keel graduated later than her originally intended graduation date and at a substantially lower grade point average than she was otherwise capable due to the sexual assault and Delaware State's failures. As her result, her plans to attend graduate school were negatively impacted.

49. After Keel graduated, Delaware State again violated its own sanction by reinstating Faustin on or about January 13, 2016, well before the adjudicated time period. Delaware State readmitted Faustin under the condition that he "abide by the Student Code of Conduct," stating his past actions "were of poor judgment and not representative of the mature and responsible behavior we hope to develop in our Delaware State University students."

50. Based on information and belief, Delaware State failed to properly train and educate their employees, including school officials, officers, investigators, and adjudicators in appropriate response to allegations of sexual harassment, sexual abuse, and retaliatory conduct, as well as necessary Title IX policies and procedures.

51. Delaware State failed to adequately educate Delaware State students, including but not limited to Faustin, on the dangers of sexual harassment, assault and retaliatory conduct, including but not limited to the impact of such conduct on victims.

52. These failures, and others, amounted to an intentional violation of Title IX by Delaware State.

53. Delaware State also acted with deliberate indifference towards Keel's reports of sexual assault and retaliation to several different school departments as reflected by Delaware State's actions and inaction alleged herein.

54. Based upon information and belief, Keel alleges that Delaware State did not conduct mandatory educational sessions or programs regarding the topics of alcohol abuse, sexual misconduct and or student rights and remedies under state and federal law. If in fact Delaware State did provide any such educational sessions or programs, they failed to ensure that such programs or sessions were attended by Delaware State students.

55. As a result of Delaware State's actions and inaction in response to Keel's report of sexual assault by Faustin and the ongoing retaliation and harassment she experienced, Keel was deprived of a multitude of educational opportunities and/or benefits, including but not limited to:
    - A significant drop in her grades;
    - An inability to join a sorority;
    - A decrease in her participation in marching band;
    - Avoidance of other social activities on campus;
    - Avoidance of certain areas of campus;
    - A loss of her scholarship that she had earned to attend Delaware State.

**FIRST CAUSE OF ACTION**
**DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF 20 U.S.C. § 1681**
**(TITLE IX)**
**(AGAINST DEFENDANT TRUSTEES)**

56. Plaintiff incorporates all paragraphs of this Complaint is if fully set forth herein.

57. Trustees' acts and failures to act perpetrated against Plaintiff amounted to unlawful sexual harassment and discrimination on the basis of gender. The harassment and discrimination was sufficiently severe and pervasive to create an abusive, and hostile educational environment for Plaintiff. One or more Delaware State administrators or officials, with authority to take corrective action on Plaintiff's behalf, had actual notice of said harassment and discrimination and failed to adequately respond, in violation of their own policies. Those failures amounted to deliberate indifference toward the unlawful sexual conduct and

retaliatory conduct that had occurred, was occurring, or was likely to occur. As a result, Plaintiff was subject to continuing harassment and a loss of educational opportunity.

58. Additionally, and/or in the alternative, Trustees failed to enact and/or disseminate and/or implement proper or adequate procedures to discover, prohibit or remedy the kind of discrimination that Plaintiff suffered. This failure included, without limitation, non-existent or inadequate customs, policies or procedures for the recognition, reporting, investigation and correction of unlawful discrimination, and the failure to properly vet students in positions of importance and influence such as Residential Assistant and Junior Class President. Those failures amounted to deliberate indifference toward the unlawful sexual conduct and retaliatory conduct that had occurred, was occurring, or was likely to occur. As a result, Plaintiff was subject to continuing harassment and a loss of educational opportunity.

59. Trustees acted with deliberate indifference in deviating significantly from the standard of care outlined by the Department of Education in the Dear Colleague Letter of 2011, the Questions and Answers of 2014 and Trustees' own policies.

60. Trustees intentionally violated Title IX by remaining deliberately indifferent to a sexually hostile culture at Delaware State University that created a heightened risk for Plaintiff, and other female students, to be sexually assaulted and subject to additional sexual misconduct.

61. Because of Trustees' deliberate indifference, Plaintiff suffered loss of educational opportunities and/or benefits and has and will continue to incur attorney fees and costs of litigation.

62. As a result of the above-described conduct, Plaintiff has suffered, and continues to suffer, great pain of mind and body, physical injury, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life; has suffered and continues to suffer spiritually; was prevented and will continue to be prevented from performing Plaintiff's daily activities and obtaining the full enjoyment of life; has sustained and will continue to sustain loss of

earnings and earning capacity; and/or has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 -VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION**

63. Plaintiff incorporates all paragraphs of this Complaint as if fully set forth herein.

64. At all times relevant herein, Defendants Duffy, Johnson and Knight acted under the color of state law, under color of their authority as agents of Delaware State University and within the scope of their employment with Delaware State University.

65. Defendants Duffy, Johnson and Knight's deliberate indifference, and willful and wanton behavior, created a danger of and increased the risk of harm to Plaintiff.

66. Defendants Duffy's, Johnson's and Knight's conduct was intentional, and motivated by gender.

67. Defendants Duffy, Johnson and Knight violated Plaintiff's civil rights by having a policy that, when enforced, caused a constitutional deprivation to Plaintiff, or by having a widespread practice and/or custom that, although not authorized by written law or express municipal policy, was so permanent and well settled as to constitute a custom or usage with the force of law.

68. Defendants Duffy, Johnson and Knight knew about the above-described conduct and facilitated it, approved it, condoned it, and/or turned a blind eye to the conduct.

69. The above-described conduct of Defendants Duffy, Johnson and Knight's constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering, mental anguish and other non-pecuniary losses.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff prays for damages; punitive damages; costs; interest; statutory/civil penalties according to law; attorneys' fees and costs of litigation, pursuant to 42 U.S.C. §1988 or other applicable law; and such other relief as the court deems appropriate and just.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS

Dated: March 25, 2019                    Respectfully submitted,

*/s/ Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
James I. Stang (CA Bar No. 94435)
James E. O'Neill (DE Bar No. 4042)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400
E-mail: ljones@pszjlaw.com
         jstang@pszjlaw.com
         joneill@pszjlaw.com

and

Alexander S. Zalkin *(admitted pro hac vice)*
Ryan M. Cohen *(Admitted pro hac vice)*
**THE ZALKIN LAW FIRM, P.C.**
12555 High Bluff Drive, Ste. 301
San Diego CA  92130
Telephone: (858) 259-3011
Facsimile: (858) 259-3015
Email: ryan@zalkin.com
         alex@zalkin.com

*Attorneys for Plaintiff Mai-ajah Keel*