## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAI-AJAH KEEL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 17-1818-MN-SRF |
| | ) |
| DELAWARE STATE UNIVERSITY BOARD OF | ) |
| TRUSTEES, CANDY YOUNG, in her individual | ) |
| Capacity, PAULA DUFFY, in her individual | ) |
| Capacity, and RANDOLPH JOHNSON, in his | ) |
| individual capacity, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

Presently before the court in this civil rights action is a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants Delaware State University Board of Trustees, Candy Young, Paula Duffy, and Randolph Johnson (collectively, "Defendants"). (D.I. 10)  For the following reasons, the court recommends Defendants' motion should be GRANTED and Plaintiff's complaint should be dismissed with prejudice.

### II.   BACKGROUND

Plaintiff Mai-Ajah Keel ("Keel" or "Plaintiff") was a student at Delaware State University ("DSU"), a public university located in Dover, Delaware. (D.I. 1 at ¶¶ 1, 6) Defendant Delaware State University Board of Trustees ("Trustees") is DSU's official governing body. (D.I. 1 at ¶ 1)  Defendant Candy Young ("Young") was the Director of the Title IX Office at DSU. (*Id.* at ¶ 2)  Young was responsible for participating in making, communicating, enforcing, and implementing all policies and practices at DSU with respect to 20 U.S.C. § 1681,

"Title IX," including insuring DSU's policies and procedures concerning Title IX comply with federal law. (*Id.*) Defendant Paula Duffy ("Duffy") is the Director of the Office of Judicial Affairs at DSU. (*Id.* at ¶ 3) As the Director of the Office of Judicial Affairs, Duffy is responsible for overseeing the enforcement of DSU policies, regulations, and rules, including but not limited to compliance with the Student Code of Conduct, as well as implementing and overseeing any judicial proceedings relative to alleged violations of DSU policies, regulations, and rules and sanctions issued by the judicial body. (*Id.*) Defendant Randolph Johnson ("Johnson") is the Director of Bands at DSU. (*Id.* at ¶ 4) As the Director of Bands, Johnson is responsible for overseeing all band activities at DSU including providing supervision, direction, and insuring the safety of all band participants. (*Id.*)

Keel alleges that on November 22, 2013, Jason Faustin ("Faustin"), a fellow DSU male student, sexually assaulted her. (*Id.* at ¶¶ 13-16) On or about November 25, 2013, Keel reported the assault to Dr. Brian Stark, a professor of criminology at DSU. (*Id.* at ¶ 18) Keel was ultimately referred to DSU's counseling services department, and Dr. Pauline Meek arranged a meeting with Keel and Faustin. (*Id.* at ¶¶ 18-20) At this meeting, Faustin apologized to Keel and agreed that he would no longer contact her. (*Id.* at ¶ 20) However, Keel claims that Faustin continued to approach her during their band practices. (*Id.* at ¶ 22)

On or about August 22, 2014, and again on or about February 4, 2015, Keel made two anonymous reports of the assault to the DSU Police Department ("DSUPD"). (*Id.* at ¶¶ 23-24) In response, DSUPD opened an investigation, and on February 5, 2015, interviewed Keel and Faustin, separately. (*Id.* at ¶ 27) DSUPD officers subsequently arrested Faustin. (*Id.* at ¶ 24) On February 6, 2015, DSUPD reported the matter to DSU's Title IX office. (*Id.* at ¶ 24) In

2

March 2015, the Title IX office opened its own investigation, and conducted a series of hearings on Keel's allegations. (*Id.* at ¶ 33)

On or about March 31, 2015, the panel found Faustin "not responsible" for violating DSU's Code of Conduct. (*Id.* at ¶ 36) On or about April 2, 2015, Keel appealed this decision, and a new hearing was granted on April 14, 2015 based on a "lack of due process, i.e. when a student can show an error in the hearing or arbitrariness in the finding against the weight of the evidence." (*Id.*) On May 11, 2015, a second panel found Faustin "responsible" for the sexual assault and rape of Keel and suspended him for a minimum of one academic year – specifically 2015-2016. (*Id.* at ¶ 37) In its rationale supporting the sanction, the panel stated:

> Having been found responsible for the sexual assault and rape of the complainant, the respondent is in violation of the General Standards of Conduct and Decorum and has exhibited violent behavior by sexually assaulting and raping the complainant. (Delaware State University, Division of Student Affairs Student Judicial Handbook, p. 5) Furthermore, the complainant has a right to continue her education and feel as though she is matriculating in a safe and secure academic environment. The complainant is now a senior. Removing the respondent for at least the 2015-2016 academic year will provide the complainant with the opportunity to do so.

(*Id.* at ¶ 38)

Keel continued to attend counseling with Dr. Meek until February 2015. (*Id.* at ¶ 22) Keel graduated from DSU on December 21, 2015. (*Id.* at ¶ 44) On January 13, 2016, DSU readmitted Faustin under the condition that he "abide by the Student Code of Conduct," stating that his past actions "were of poor judgment and not representative of the mature and responsible behavior we hope to develop in our [DSU] students." (*Id.* at ¶ 46)

On December 19, 2017, Keel initiated this suit against Defendants, asserting claims for discrimination on the basis of gender in violation of Title IX and violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution pursuant to 42

3

U.S.C. § 1983. (D.I. 1) On February 20, 2018, Defendants filed the current motion to dismiss the complaint pursuant to Rule 12(b)(6). (D.I. 10)

## III. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Umland v. Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008).

To state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555-56.

When determining whether dismissal is appropriate, the court must take three steps.[1] *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must identify the elements of the claim. *Iqbal*, 556 U.S. at 675. Second, the court must identify and reject conclusory allegations. *Id.* at 678. Third, the court should assume the veracity of the well-

---

[1] Although *Iqbal* describes the analysis as a "two-pronged approach," the Supreme Court observed that it is often necessary to "begin by taking note of the elements a plaintiff must plead to state a claim." 556 U.S. at 675, 679. For this reason, the Third Circuit has adopted a three-pronged approach. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 n.7 (3d Cir. 2010); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

4

pleaded factual allegations identified under the first prong of the analysis, and determine whether they are sufficiently alleged to state a claim for relief. *Iqbal*, 556 U.S. at 679; *see also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The third prong presents a context-specific inquiry that "draw[s] on [the court's] experience and common sense." *Id.* at 663-64; *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV.  DISCUSSION

### A. Statute of Limitations

First, Defendants argue that Keel's claims are barred under the applicable statute of limitations. (D.I. 11 at 4-5) The parties do not dispute that Keel's claims are subject to the two-year statute of limitations applicable to personal injury claims under Delaware law.[2] To avoid the statute of limitations bar, Keel argues that DSU created a hostile environment that, under the doctrine of continuing violations, caused her claims to accrue from the date her hostile

---

[2] The statute of limitations for filing a cause of action under Title IX is subject to the respective state's statute of limitations governing causes of action for personal injuries. *See Bougher v. University of Pittsburgh*, 882 F.2d 74, 77-78 (3d Cir. 1989). Because Delaware's statute of limitations for personal injury claims is two years, *see* 10 Del. C. § 8119, Keel's Title IX claims are subject to a two-year statute of limitations. *Lamb-Bowman v. Delaware State Univ.*, 1999 WL 1250889, at *9 (D. Del. Dec. 10, 1999). The statute of limitations for filing a cause of action under 42 U.S.C. § 1983 is also the relevant state's statute of limitations governing causes of action for personal injuries. *Wilson v. Garcia*, 471 U.S. 261, 276-78 (1985); *accord Sameric Corp. of Delaware, Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). Therefore, Keel's Section 1983 claims are similarly subject to a two-year statute of limitations. *Lamb-Bowman*, 1999 WL 1250889, at *8; *see also Smith v. Delaware*, 236 F. Supp. 3d 882, 888 (D. Del. 2017) ("For purposes of the statute of limitations, § 1983 claims are characterized as personal injury actions. In Delaware, § 1983 claims are subject to a two-year limitations period." (internal citations omitted)). Section 1983 claims accrue "when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric*, 142 F.3d at 599.

environment ceased to exist – when she graduated from DSU on December 21, 2015. (D.I. 14 at 6-7)

The continuing violation doctrine, which is generally recognized under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, provides that discriminatory acts that are not individually actionable may be aggregated to make out a hostile environment claim. *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 566 (3d Cir. 2017) (citing *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013)). These acts can occur at any time if they are linked in a pattern of actions continuing into the limitations period. *Id.* All the alleged acts must be part of the same unlawful practice, meaning they involved "similar conduct by the same individuals, suggesting a persistent, ongoing pattern." *Id.* The Third Circuit has held, however, that it is "an open question in our Court" whether the continuing violations doctrine applies under Title IX. *Id.* Some courts suggest it does. *See, e.g.*, *Stanley v. Trs. of California State Univ.*, 433 F.3d 1129, 1136 (9th Cir. 2006). Others suggest it does not. *See, e.g.*, *Folkes v. New York Coll. of Osteopathic Med.*, 214 F. Supp. 2d 273, 288-91 (E.D.N.Y. 2002). The Third Circuit has yet to decide the issue. However, Keel's claims are time barred regardless of whether the court applies the continuing violation doctrine in this matter.

Significantly, almost every allegation in Keel's complaint describes events that occurred prior to December 19, 2015, and, therefore, took place outside the limitations period. (*See* D.I. 1) The only allegation within the limitations period is Keel's claim that DSU readmitted Faustin on or about January 13, 2016, a semester earlier than originally recommended by the disciplinary panel. (*Id.* at ¶ 38, 46) However, Keel graduated on December 21, 2015, and was no longer a student on campus when Faustin was reinstated. (*Id.* at ¶¶ 44-46) As such, DSU ensured that Keel could "continue her education and feel as though she is matriculating in a safe and secure

6

academic environment," completing her tenure without Faustin on campus. (*Id.* at ¶¶ 37-38)
Therefore, Keel's Title IX and Section 1983 claims based on those allegations are untimely and
should be dismissed.

Even if the court were to apply the continuing violations doctrine to Keel's Title IX
hostile environment claim, the alleged incidents here would not invoke the doctrine. Keel argues
that "DSU's deliberate indifference maintained a hostile environment up until the point that Keel
graduated on December 21, 2015." (D.I. 14 at 7) Specifically, Keel argues that DSU: engaged
in unjustifiable delay in investigating and adjudicating Keel's reports of rape and ongoing
harassment; came to an initial erroneous outcome when adjudicating Keel's report; engaged in a
biased and inequitable investigation and adjudicatory process; failed to implement and enforce
reasonable interim measures for Keel's protection; and failed to comply with federal
requirements for responding to instances of sexual misconduct. (*Id.* at 8-9) However, taking
these alleged facts as true, these alleged "continuing violations" ceased on May 11, 2015, when a
second DSU panel found Faustin "responsible" for a conduct violation and suspended him for
the 2015-2016 academic year. (D.I. 1 at ¶ 37) Keel does not allege any facts relating to any
incident or harm allegedly suffered by her after May 11, 2015 and through the date of her
graduation on December 21, 2015, except for her chance encounter with Faustin in September
2015. (*Id.* at ¶ 40) Concerning the September 2015 encounter, Keel alleges only that she entered
her advisor's office and she came into "direct contact" with Faustin who was seated in the
faculty member's office. (*Id.*) This conduct was not sufficiently similar to Faustin's previously
alleged conduct to plausibly invoke the continuing-violation doctrine, assuming it may be
applied here. *See Mercy Catholic Med. Ctr.*, 850 F.3d at 566 (citing *Mandel*, 706 F.3d at 167).
Accordingly, this claim is time-barred.

**B. Failure to State a Claim**

Recommending dismissal of the complaint pursuant to the applicable statute of limitations eliminates the need to consider Defendants' alternative argument that Keel's complaint also fails to allege facts sufficient to state a claim. (D.I. 11 at 5-9) However, for the sake of completeness, this Report and Recommendation addresses the merits of this argument.

**1. Title IX**

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has held that a public-school student may bring suit against a school under Title IX for student-on-student sexual harassment. *See Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999). The private right of action only lies, however, where the school is deliberately indifferent to known acts of sexual harassment "that [are] so severe, pervasive, and objectively offensive that it can be said to deprive the victim[ ] of access to the educational opportunities or benefits provided by the school." *Id.* at 650. Deliberate indifference requires a response (or failure to respond) that is "clearly unreasonable in light of the known circumstances." *Id.* at 648; *see also Mercy Catholic Med. Ctr.*, 850 F.3d at 566. To establish deliberate indifference, a plaintiff must show that the school made "an official decision . . . not to remedy" the sexual harassment. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1989). This showing, which is a burden placed on the plaintiff, is purposefully high "to eliminate any 'risk that [a recipient of federal funds] would be liable in damages not for its own official decision but instead for its employees' independent actions.'" *Davis,* 526 U.S. at 643 (quoting *Gebster*, 524 U.S. at 290-91).

8

Keel argues that DSU acted with deliberate indifference to Keel's report of the sexual assault by: engaging in unjustifiable delay in investigating and adjudicating Keel's reports of rape and ongoing harassment; coming to an initial erroneous outcome when adjudicating Keel's report; engaging in a biased and inequitable investigation and adjudicatory process; failing to implement and enforce reasonable interim measures for Keel's protection; and failing to comply with federal requirements for responding to instances of sexual misconduct. (D.I. 14 at 8-9)

Here, however, Defendants' actions in response to Keel's assault fail to amount to a showing that "an official decision" was made "not to remedy the violation." Keel alleges in the complaint that DSUPD conducted a criminal investigation of Keel's claims, which resulted in Faustin's arrest; DSU's Title IX office conducted its own investigation and held disciplinary hearings, which resulted in the removal of Faustin from campus for the remainder of Keel's tenure at DSU; and Keel was offered counseling services, which she utilized for months. (D.I. 1 at ¶¶ 22-24, 27, 33-38)

Keel also argues that she suffered continued harassment and retaliation from Faustin and members of the DSU band, demonstrating that Defendants' actions were unreasonable. (D.I. 14 at 10, 14) This argument, however, does not alter the recommended outcome. "It is well-established that schools are not required to 'remedy' harassment or to conform their students' behavior to a certain manner of conduct. Instead, as the Supreme Court has made clear, the effectiveness of a [school's] methods is not a factor considered in the Title IX analysis and ineffectiveness is not dispositive of Title IX liability." *P.K. ex rel. Hassinger v. Caesar Rodney High Sch.*, C.A. No. 10-cv-783 GMS, 2012 WL 253439, at \*9 (D. Del. Jan. 27, 2012) (citing *Davis*, 526 U.S. at 648-49 (stating that schools are not required to "remedy" the harassment or "purg[e] their schools of actionable peer harassment" to avoid Title IX liability)). In view of this

precedent, Keel's assertions that "Faustin continued to repeatedly hug, touch, and attempt to talk to Keel," and that she was called derogatory names from fellow DSU band members following Faustin's arrest, who "even discussed physically pushing Keel whenever she walked by," are not supported by any authority that would establish an actionable claim under Title IX. (D.I. 14 at 14)

Therefore, in addition to being time barred, Keel's Title IX claim should be dismissed for failure to state a claim.

### 2. Section 1983

Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States. *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citing *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000)). This section does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right. *Id.* (citing *Gruenke*, 225 F.3d at 298; *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To establish valid claims under § 1983, the plaintiff must demonstrate that the defendants, while acting under color of state law, deprived him of a right secured by the Constitution or the laws of the United States. *Id.* (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)). Under the Fourteenth Amendment, no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In order to bring a successful § 1983 claim for the denial of equal protection, plaintiffs must prove the existence of purposeful discrimination. *Shuman*, 422 F.3d at 151 (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990)). In other words, they must demonstrate that they received different treatment from that received by other individuals similarly situated.

10

*Id.* (citing *Andrews*, 895 F.2d at 1478; *Kuhar v. Greensburg–Salem Sch. Dist.*, 616 F.2d 676, 677 n.1 (3d Cir. 1980)). Specifically, to prove sexual discrimination, a plaintiff must show that any disparate treatment was based upon her gender. *Id.* (internal citation omitted).

Keel argues that she has alleged that Defendants, individually and collectively, acted with deliberate indifference to her multiple reports that she was raped, and experienced subsequent harassment and retaliation after reporting her rape, and that these "voluminous allegations" support Keel's Section 1983 claim for violation of her constitutional right to equal protection under the law. (D.I. 14 at 18) However, general conclusory statements are insufficient to maintain a cause of action. "In order to bring a successful section 1983 claim for the denial of equal protection, plaintiffs must prove the existence of purposeful discrimination." *See Shuman*, 422 F.3d at 151. Keel has failed to allege purposeful disparate treatment and discrimination based on gender. Moreover, she fails to address how she was arguably treated differently from others similarly situated.

Therefore, in addition to being time barred, Keel's Section 1983 claim should be dismissed for failure to state a claim.

### C. Qualified Immunity

In addition to arguing that Keel's claims are time barred, Defendants also argue that the individual defendants – Young, Duffy, and Johnson – are immune from suit under qualified immunity. (D.I. 11 at 10)

Qualified immunity shields government officials from personal liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *George v. Rehiel*, 738 F.3d 562, 572 (3d Cir. 2013) (internal quotations omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

The doctrine "is intended to mitigate the social costs of exposing government officials to personal liability, by giving officials breathing room to make reasonable but mistaken judgments about open legal questions." *Id.* (internal quotations and citations omitted). Properly applied, it protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotations and citations omitted). Thus, the court must first determine whether the facts alleged by the plaintiff show the violation of a constitutional right, and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation. *Torisky v. Schweiker*, 446 F.3d 438, 442-43 (3d Cir. 2006).

Keel argues that her right to be free from student-on-student harassment is well established, and that the facts as alleged establish a violation of her right to equal protection. (D.I. 14 at 19)  In her opposition to the motion, Keel cites the legal standards but does not apply the standards to any facts alleged.  Moreover, even if the court assumes that Plaintiff has shown the violation of a constitutional right, she has not demonstrated whether that right was clearly established at the time of the alleged violation, other than in conclusory fashion.

## V.    CONCLUSION

For the foregoing reasons, I recommend the court grant Defendants' motion to dismiss the complaint as time barred and, alternatively for failure to state a claim pursuant to Rule 12(b)(6).  (D.I. 10)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  Fed. R. Civ. P. 72(b)(2).  The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de

novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: November 26 , 2018

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE