**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MAI-AJAH KEEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 17-1818-MN-MPT |
| | ) | |
| DELAWARE STATE UNIVERSITY | ) | |
| BOARD OF TRUSTEES; | ) | |
| CANDY YOUNG, in her individual | ) | |
| capacity; PAULA DUFFY, in her | ) | |
| individual capacity; and RANDOLPH | ) | |
| JOHNSON, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

## I.   INTRODUCTION

Presently before the court is a motion to dismiss an amended complaint for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6).  The first amended complaint (the "First Amended Complaint") was filed subsequent to an order that dismissed Plaintiff Mai-Ajah Keel's ("Keel" or "Plaintiff") original complaint without prejudice.[1]  Defendants Delaware State University Board of Trustees, Candy Young, Paula Duffy, and Randolph Johnson (collectively, "Defendants") now move to dismiss Plaintiff's First Amended Complaint, which was corrected by the Plaintiff, and will be referred to herein as the "Corrected First Amended Complaint."[2]

---

[1] D.I. 24 at 1.
[2] D.I. 27 at 1-2.

II.    **BACKGROUND**

   A. **Parties**

   Plaintiff was a student at Delaware State University ("DSU"), a public university located in Dover, Delaware from fall 2011 until her graduation on December 21, 2015.[3] Defendant DSU Board of Trustees ("Trustees") is "the official governing body of [DSU] and is charged with operating and governing [DSU] . . . ."[4] Defendant Candy Young ("Young") was "the Director of the Title IX Office at [DSU]."[5] Defendant Paula Duffy ("Duffy") is "the Director of the Office of Judicial Affairs at [DSU]," who as alleged by Plaintiff as responsible for "overseeing any judicial proceedings relative to alleged violations of [DSU] policies, regulations, and rules and sanctions issued by the judicial body."[6] Defendant Randolf Johnson ("Johnson") is "the Director of Bands at [DSU]," whom Plaintiff claims "is responsible for overseeing all band activities . . . including . . . supervision, direction, and insuring the safety of all band participants."[7]

   B. **Procedural Background**

   On December 19, 2017, Plaintiff instituted her action against Defendants asserting discrimination on the basis of gender in violation of 20 U.S.C. § 1681 (Title IX) against the DSU Trustees,  and as against Young, Duffy, and Johnson for violating 42 U.S.C. § 1983 (the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution).[8] Defendants moved to dismiss the original Complaint on

---

[3] D.I. 30 at 1-2, 12.
[4] D.I. 23 at 1; D.I. 30 at 1.
[5] D.I. 30 at 1.
[6] D.I. 23 at 1-2; D.I. 30 at 1-2.
[7] D.I. 30 at 2.
[8] D.I. 1 at 1-16.

February 20, 2018, and subsequently, Magistrate Judge Fallon issued a Report and
Recommendation recommending dismissal with prejudice, on the bases that Plaintiff's
claims were barred by the statute of limitations, and for failure to state a claim.[9]
Subsequent to Plaintiff's objections and Defendants' response, Judge Maryellen
Noreika overruled Plaintiff's objections and adopted the Report and Recommendation
granting Defendants' motion to dismiss.  However, in a footnote Judge Noreika stated
that "it is not entirely certain that Plaintiff cannot allege facts sufficient to survive a
motion to dismiss pursuant to Rule 12(b)(6), and thus will grant the motion without
prejudice."[10]

        With this opportunity, Plaintiff filed an Amended Complaint on March 25, 2019.[11]
This court notes the following:  Plaintiff's First Amended Complaint, as it relates to the
 42 U.S.C. § 1983 cause of action, dismissed a defendant that was in the original
Complaint and added another defendant.[12]  Plaintiff later corrected the First Amended
Complaint by dismissing the newly added defendant and included a defendant who was
in the original Complaint.[13]  In light of this correction, the First Amended Complaint will
be referred to herein as the "Corrected First Amended Complaint."

### C.  Factual Background

        Plaintiff alleges that approximately two years after enrolling at DSU, on or about
November 22, 2013, Jason Faustin ("Faustin"), another student, sexually assaulted her

---

[9] D.I. 19 at 1-13; D.I. 28 at 1.
[10] D.I. 23 at 1; D.I. 28 at 1.
[11] D.I. 25 at 1-16.
[12] *Id.* at 15.
[13] D.I. 30 at 15.

in his dorm room.[14]  A few days after the alleged assault, Keel reported the incident to

Dr. Brian Stark, DSU's criminology professor.[15]  Thereafter, Keel was referred to Dr.

Pauline Meek in DSU's counseling services department who held a mediation session

between Keel and Faustin, despite Keel telling Dr. Meek that she was fearful of

encountering Faustin on campus.[16]  During the mediation, Faustin apologized to Keel

and agreed not to contact her anymore.  Keel, however, alleges that "Faustin continued

to hug, touch, and attempt to talk to [her], in violation of his agreement at the

mediation."[17]  Plaintiff alleges that harassment by Faustin continued and she informed

Dr. Meek, who took no action.[18]

Keel alleges that because DSU did not prevent Faustin from harassing her, she

reported Faustin to the DSU Police Department (the "DSUPD") on August 22, 2014,

and again on February 5, 2015.[19]  During an interview with Sargent Joi Simmons of the

DSUPD, Faustin admitted that Keel told him "'no' and 'stop' several times."[20]  An

investigation of Faustin's conduct by the DSUPD revealed that he "allegedly sexually

assaulted at least three other women in a similar manner to his assault of Keel."[21]

Ultimately, Faustin was arrested.[22]  Plaintiff contends that Simmons reported to DSU

administrators that "she was concerned that . . . a hostile environment existed for

---

[14] D.I. 28 at 2; D.I. 31 at 2.
[15] D.I. 31 at 2.
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.* at 3 (quoting D.I. 30 ¶ 24).
[21] D.I. 31 at 3.
[22] *Id.*

victims on campus."[23]  Keel alleges that she continued to experience a hostile environment on campus, by being called derogatory names and was fearful of being physically assaulted by other students.[24]  Not only does Keel assert a hostile campus environment, she further claims that DSU's Assistant Band Director Lenny Knight ("Knight") harassed her by his comments that he was tired of people not showing up because of "'bullshit'" and "'drama.'"[25]  Plaintiff alleges that Knight also "berated" her for "'making big things out of little things.'"[26]

In March 2015, DSU held a hearing to adjudicate Keel's report of Faustin's conduct.  "[T]he hearing panel found Faustin 'not responsible' for raping Keel."[27] Shortly thereafter, Keel appealed the decision.  As a result of Keel's appeal, Faustin was found "'responsible'" for sexual assault, and was suspended for the DSU 2015-2016 academic year.[28]  In its finding, DSU noted:

> Having been found responsible for the sexual assault and rape of the complainant [Keel], the respondent [Faustin] is in violation of the General Standards of Conduct and Decorum and has exhibited violent behavior by sexually assaulting and raping the complainant.  (Delaware State University, Division of Student Affairs Student Judicial Handbook, p. 5) Furthermore, the complainant has a right to continue her education and feel as though she is matriculating in a safe and secure environment.  The complainant is now a senior.  Removing the respondent for at least the 2015-2016 academic year will provide the complainant with the opportunity to do so.[29]

Keel alleges that DSU assured her that Faustin would not be on campus, and if he

---

[23] *Id.*
[24] *Id.* at 3.
[25] *Id.* (quoting D.I. 30 ¶ 28).
[26] *Id.* (quoting D.I. 30 ¶ 28).
[27] D.I. 31 at 3-4 (quoting D.I. 30 ¶ 36).
[28] *Id.* at 4 (quoting D.I. 30 ¶ 37).
[29] D.I. 30 at 9-10.

were, DSU would provide her a police escort.[30]

Even though DSU supposedly banned Faustin from campus during the 2015-2016 academic year, Plaintiff asserts that it allowed Faustin on campus throughout the Fall 2015 semester to participate in the academic program.[31] During this time, Plaintiff alleges that on one occasion, she "noticed" that Faustin was in her advisor's office.[32] Plaintiff contends that despite Faustin's purported suspension, he was permitted on campus that day to take a final exam.[33] Keel further maintains that Faustin was often seen on campus by her friends.[34] According to Keel, she was never informed when he was on campus nor provided an escort.[35]

Following Keel's alleged encounter with Faustin in her advisor's office, she reported this incident to the Title IX and the Judicial Affairs offices.[36] Keel alleges that neither accepted responsibility for the enforcement of the sanction against Faustin.[37] Furthermore, Keel alleges that "[s]he was . . . constantly vulnerable to additional harassment by Faustin up until the day she graduated and left campus on December 21, 2015."[38] Following her graduation, Keel alleges that on or about January 13, 2016, DSU readmitted Faustin to the school in violation of its own sanction.[39]

---

[30] D.I. 31 at 4.
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.* at 5.
[36] D.I. 31 at 5.
[37] *Id.*
[38] *Id.*
[39] D.I. 30 at 12.

## III.    STANDARD OF REVIEW

### A.  Fed. R. Civ. P. 12(b)(6)

FED. R. CIV. P. 12(b)(6) permits a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  The purpose of a motion under Rule 12(b)(6) is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case.[40]  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[41]  A motion to dismiss may be granted only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[42]  While the court draws all reasonable factual inferences in the light most favorable to a plaintiff, it rejects unsupported allegations, "bald assertions," and "legal conclusions."[43]

To survive a motion to dismiss, plaintiff's factual allegations must be sufficient to

---

[40] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[41] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotations and citations omitted); *see also Twombly*, 550 U.S. 544, 563 n.8 ("[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.").

[42] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (citing *In re Burlington*, 114 F.3d at 1420).

[43] *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted); *see also Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) (rejecting "unsupported conclusions and unwarranted inferences") (citations omitted); *see generally Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume [the plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged.").

"raise a right to relief above the speculative level . . . ."[44]  Plaintiff is therefore required to

provide the grounds of his or her entitlement to relief beyond mere labels and

conclusions.[45]  Although heightened fact pleading is not required, "enough facts to state

a claim to relief that is plausible on its face" must be alleged.[46]  A claim has facial

plausibility when a plaintiff pleads factual content sufficient for the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged.[47]  Once

adequately stated, a claim may be supported by showing any set of facts consistent

with the allegations in the complaint.[48]  Courts generally consider only the allegations

contained in the complaint, exhibits attached to the complaint, and matters of public

record when reviewing a motion to dismiss.[49]

### B.  Statute of Limitations

Undisputed by the parties is that causes of action under Title IX and 42 U.S.C.

§ 1983 are subject to Delaware's statute of limitation's for personal injuries, which is two

years.[50]  In her memorandum granting the Defendants' motion to dismiss the original

Complaint, Judge Noreika commented as follows on the Court's authority to decide a

---

[44] *Twombly*, 550 U.S. at 555 (citations omitted); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

[45] *See Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

[46] *Id.* at 570; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) ("In its general discussion, the Supreme Court explained that the concept of a 'showing' requires only notice of a claim and its grounds, and distinguished such a showing from 'a pleader's bare averment that he wants relief and is entitled to it.'") (quoting *Twombly*, 550 U.S. at 555 n.3).

[47] *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

[48] *Twombly*, 550 U.S. at 563 (citations omitted).

[49] *See, e.g.*, *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993) (citations omitted).

[50] *See* D.I. 33 at 1; D.I. 23 at 6.  *See also,* 10 *Del C.* § 8119.

statute of limitations issue under a Rule 12(b)(6) motion:

> The statute of limitations is an affirmative defense that a defendant must usually plead in his answer. *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). Nevertheless, the Third Circuit "permit[s] a limitations defense to be raised by a motion under Rule 12(b)(6) . . . if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (internal quotation marks omitted). Thus, "a district court may grant a motion under Rule 12(b)(6) raising a limitations defense if 'the face of the complaint demonstrates that the plaintiff's claims are untimely." *Id.* (citing *Schmidt*, 770 F.3d at 249 (internal quotations omitted)).[51]

## IV.   ANALYSIS

### A.   Statute of Limitations

The relevant date in this case to analyze the statute of limitations defense is

December 19, 2015, two years prior to December 19, 2017, the date on which Plaintiff

filed her original Complaint.[52]   The issue is whether the continuing tort doctrine applies,

which would permit Plaintiff to bring the actions set forth in her Corrected First

Amended Complaint.[53]   The Court's memorandum opinion addressed the law as to the

operation and application of the continuing-violation doctrine:

> [T]he continuing-violation doctrine . . . is generally recognized under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, to provide that discriminatory acts that are not individually actionable may be aggregated to make out a hostile environment claim. *Doe v. Mercy Catholic Med Ctr.,* 850 F.3d 545,566 (3d Cir. 2017). These acts can occur at any time if they are linked in a pattern of actions continuing into the limitations period. *Id.* All alleged acts, however, must be part of the same unlawful practice, meaning they involved "similar conduct by the same individuals, suggesting a persistent, ongoing pattern." *Id.* (citing *Mandel v. M&Q Packaging Corp.,* 706 F.3d 157, 165 (3d Cir. 2013)).
>
> The continuing-violation doctrine "is an 'equitable exception to the

---

[51] D.I. 23 at 7.
[52] D.I. 1 at 16.
[53] D.I. 31 at 7.

timely filing requirement.'"  *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir.2001) (quoting *West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir.1995)). Under the doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 481 (3d Cir. 2014)(quoting *Cowell*, 263 F.3d at 292). "[T]he court will grant relief for the earlier related acts that would otherwise be time barred." *Cowell*,263 F.3d at 292. The doctrine, however, focuses on "continual unlawful acts, not continual ill effects from an original violation." *Weis–Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 423 (3d Cir.2005) (quoting *Cowell*, 263 F.3d at 293). Only defendants'"affirmative acts" count. *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 235 (3d Cir. 2014)(quoting*Cowell*,263 F.3d at 293). "[A] government official's refusal to undo or correct [a] harm [caused by the official's unlawful conduct] is not an affirmative act for purposes of establishing a continuing violation." *Tearpock-Martini*, at 236 n. 8.[54]

Plaintiff submits that the continuing tort doctrine applies because she was "vulnerable to additional harassment by Faustin" due to DSU's alleged deliberately indifferent conduct "by failing to take action to mitigate Keel's vulnerability to additional harassment, . . ." until her graduation on December 21, 2015.[55]  Plaintiff alleges that DSU readmitted Faustin on or about January 13, 2016, thereby demonstrating "that DSU acted with deliberate indifference by failing to take action to mitigate Keel's vulnerability to additional harassment, a duty owed under Title IX."[56]  As correctly noted by Defendants, however, "Plaintiff does not allege any harm related to this [allegation], nor does she allege that she even ever saw the Respondent [Faustin] herself,"[57] except for a single incident *prior* to December 19, 2015 when she saw Faustin in her advisor's office around September 2015.[58]  The continuing-violation doctrine focuses on "continual unlawful acts,

---

[54] D.I. 23 at 7-8.
[55] D.I. 31 at 7-9.
[56] D.I. 31 at 9; D.I. 30 at 12; D.I. 28 at 4-5.
[57] D.I. 28 at 4 (citing Am. Compl. ¶ 42).
[58] D.I. 30 at 10.

not continual ill effects from an original violation."[59]  Here, because the facts alleged by

Plaintiff do not show that Defendants acted with "deliberate indifference" within the two

years following Keel's alleged sexual assault, the Title IX and the 42 U.S.C. § 1983 Equal

Protection claims, are time-barred.

B.      Plaintiff's IX Claim

A primary dispute in this matter is whether DSU acted with "deliberate indifference"

in responding to Keel's alleged sexual assault.[60]  The law regarding claims brought under

Title IX was set forth in the memorandum opinion rendered by the district court judge in her

decision on the original Complaint:

> Title IX provides that "[n]o person in the United States shall, on the basis of
> sex, be excluded from participation in, be denied the benefits of, or be
> subjected to discrimination under any education program or activity receiving
> Federal financial assistance."  20 U.S.C. § 1681(a).  A public-school student
> may bring suit against a school under Title IX for student-on-student sexual
> harassment, "but only where the [school] acts with deliberate indifference to
> known acts of harassment in its programs or activities" and "only for
> harassment that is so severe, pervasive, and objectively offensive that it
> effectively bars the victim's access to an educational opportunity or benefit."
> *Davis Next Friend LaShonda D. v. Monroe Cty. Bd of Educ.*, 526 U.S. 629,
> 633 (1999).
>
> Deliberate indifference requires a response (or failure to respond) that
> is "clearly unreasonable in light of the known circumstances."  *Id* at 648; *see
> also Mercy Catholic Med Ctr.*, 850 F.3d at 566.  To establish deliberate
> indifference, a plaintiff must show that the school knew about the plaintiff's
> sexual assault and ensuing harassment and failed to respond adequately.
> *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1989) ("[W]e
> hold that a damages remedy will not lie under Title IX unless an official who
> at a minimum has authority to address the alleged discrimination and to
> institute corrective measures on the recipient's behalf has actual knowledge
> of discrimination in the recipient's programs and fails adequately to
> respond."); *see also Terrell v. Delaware State Univ.*, C.A. No. 09-464 (GMS),
> 2010 WL 2952221, at *2 (D. Del. July 23, 2010).  "To establish deliberate

---

[59] *Weis–Buy Servs., Inc.*, 411 F.3d at 423 (quoting *Cowell*, 263 F.3d at 293).
[60] D.I. 28 at 6; D.I. 31 at 15.

indifference, a plaintiff must show that the school made an official decision not to remedy the sexual harassment." *Terrell*, 2010 WL 2952221, at *2 (citing *Gebser*, 524 U.S. at 290).

"Deliberate indifference claims impose a significant burden on the plaintiff and consequently rarely proceed beyond a motion to dismiss." *Saravanan v. Drexel Univ.*, 2017 WL 5659821, at *7 (E.D. Pa. Nov. 24, 2017); *see also T.B. v. New Kensington-Arnold Sch. Dist.*, 2016 WL 6879569, at *7 (W.D. Pa. Nov. 22, 2016) ("The deliberate indifference standard sets a high bar for a plaintiff seeking to recover under Title IX.").[61]

Plaintiff argues that DSU acted with deliberate indifference by failing to implement "any protective measures from the time Keel made her report to the time that Faustin was suspended."[62] Furthermore, Plaintiff alleges that she was "actually harassed by other students and faculty on campus as a result of making her report, which DSU failed to address entirely."[63] In support of her deliberate indifference argument, Plaintiff relies heavily upon *Joyce v. Wright State Univ.*, 2018 U.S. Dist. LEXIS 1000780, (S.D. Ohio June 15, 2018).[64] Plaintiff's reliance upon *Joyce v. Wright State Univ.* is misplaced.

In *Joyce*, the court "held that the defendant's failure to implement *any* interim safety measures for three days, especially given its knowledge that the perpetrator had sexually harassed or assaulted multiple women . . . created a question of fact sufficient to defeat the defendant's motion to dismiss."[65] Here, as emphasized by Defendants and consistent with Plaintiff's own allegations, when she reported her sexual assault,

DSUPD conducted a criminal investigation of Plaintiff's claims, which resulted in the Respondent's arrest; DSU's Title IX office conducted its own investigation and held disciplinary hearings, which resulted in the removal of the Respondent from campus for the remainder of Plaintiff's tenure at the University; and Plaintiff was offered counseling services, which she utilized . . . .[66]

While the court does not disagree with her claim that greater protective measures could have been taken by DSU to ensure her safety, the standard Plaintiff must meet to succeed on a Title IX claim requires a showing that DSU "acted with deliberate

---

[61] D.I. 23 at 10-12.
[62] D.I. 31 at 17.
[63] *Id.*
[64] D.I. 14-18.
[65] D.I. 31 at 17 (citing *Joyce v. Wright State Univ.*, 2018 U.S. Dist. LEXIS 100780, at *17 (S.D. Ohio June 15, 2018)) (emphasis added).
[66] D.I. 33 at 9.

12

indifference to known acts of harassment."[67]  As previously noted, "[d]eliberate indifference requires a response (or failure to respond) that is "clearly unreasonable in light of the known circumstances."[68]  Here, DSU responded to Plaintiff's allegations in a manner that was not "clearly unreasonable."  Therefore, for the foregoing reasons, Plaintiff's Title IX claim should be dismissed.

### C.      Plaintiff's 42 U.S.C. § 1983 Equal Protection Claim

In Plaintiff's Corrected First Amended Complaint, she alleges that Defendants Young, Duffy, and Johnson violated the Equal Protection Clause of the Fourteenth Amendment.[69]  Plaintiff seeks compensatory damages for physical injury, emotional pain, suffering, mental anguish, and other non-pecuniary losses.[70]  In Plaintiff's opposition to Defendants motion to dismiss, she asserts that she made no new allegations in her First Amended Complaint, which became her Corrected First Amended Complaint, that are relevant to her 42 U.S.C. § 1983 Equal Protection claim.[71] Because Plaintiff alleges no new facts regarding this claim and Judge Noreika held that Plaintiff's "general statements and the underlying allegations in the Complaint on which they are based" as insufficient to adequately state an Equal Protection claim,[72] this claim also should be dismissed.  Similarly, and as found in the district court judge's memorandum addressing Plaintiff's original Complaint, because she fails to allege a

---

[67] *Davis Next Friend LaShonda D. v. Monroe Cty. Bd of Educ.*, 526 U.S. 629, 633 (1999).

[68] *Id* at 648; *see also Mercy Catholic Med Ctr.*, 850 F.3d at 566.

[69] D.I. 30 at 15.

[70] *Id.*

[71] D.I. 31 at 1.

[72] D.I. 23 at 15.

violation of her Equal Protection rights, the issue of the application of qualified immunity raised by Defendants need not be addressed.[73]  For this defense to exist, a complaint must first show that there was a violation of a constitutional right.[74]

## V.   RECOMMENDED DISPOSITION

Consistent with the findings herein, it is recommended that:

Defendants' motion to dismiss (D.I. 27) be granted on the grounds that the Corrected First Amended Complaint is time barred and, alternatively, for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6).

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D.Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served a copy of this Report and Recommendation.[75]  These objections and response to the objections are limited to ten (10) pages each.

The parties are directed to the Court's standing Order in Non-*Pro Se* matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Date: October 29, 2019                    /s/ Mary Pat Thynge
                                          UNITED STATES MAGISTRATE JUDGE

---

[73] D.I. 23 at 16 (citing *Torisky v. Schweiker*, 446 F.3d 438, 442-43 (3d Cir. 2006).
[74] *Id.*
[75] FED. R. CIV. P. 72(b)(2).