IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAI-AJAH KEEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DELAWARE STATE UNIVERSITY ) | C.A. No. 17-1818 (MN) |
| BOARD OF TRUSTEES; CANDY ) | |
| YOUNG, in her individual capacity; PAULA ) | |
| DUFFY, in her individual capacity; and ) | |
| RANDOLPH JOHNSON, in his individual ) | |
| capacity, ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Laura Davis Jones, James I. Stang, James E. O'Neill – PACHULSKI STANG ZIEHL & JONES LLP, Wilmington, DE; Alexander S. Zalkin, Ryan M. Cohen – THE ZALKIN LAW FIRM, P.C., San Diego CA – Attorneys for Plaintiff

James D. Taylor, Jr., SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, DE – Attorneys for Defendants

May 31, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**:

Presently before the Court are the objections of Plaintiff Mai-Ajah Keel ("Plaintiff" or "Keel") (D.I. 35) to Magistrate Judge Thynge's Report and Recommendation (D.I. 34, "the Report"). The Report recommended granting the motion (D.I. 27) of Defendants Delaware State University Board of Trustees, Candy Young, Pamela Duffy, and Randolph Johnson (collectively "Defendants") to dismiss the Amended Complaint (D.I. 30)[1] filed in this case. The Court has reviewed the Report (D.I. 34), Plaintiff's objections (D.I. 35) and Defendants' responses thereto (D.I. 36), and the Court has considered *de novo* the objected-to portions of the Report and the relevant portions of Defendants' motion to dismiss and Plaintiff's response to the motion (*see* D.I 27, 28, 31, 33). For the reasons set forth below, Plaintiff's objections are SUSTAINED, the Report is ADOPTED-IN-PART and REJECTED-IN-PART and Defendant's motion to dismiss is GRANTED-IN-PART and DENIED-IN-PART.[2]

## I. BACKGROUND

### A. Factual Background

Plaintiff was a student at Delaware State University ("DSU") prior to her graduation on December 21, 2015. (D.I. 30 ¶¶ 9, 47). Defendant DSU Board of Trustees is "the official governing body of [DSU] and is charged with operating and governing [DSU] . . . ." (D.I. 30 ¶ 1).[3]

---

[1] Plaintiff's Amended Complaint was filed as D.I. 25. Thereafter, the parties stipulated (D.I. 29) to the filing of a "corrected version" of the Amended Complaint, which was filed as D.I. 30. It is the corrected version (D.I. 30) that is at issue in the instant motion.

[2] Plaintiff does not object to the Report's recommendation that her Second Cause of Action, asserting claims pursuant to § 1983, should be dismissed. (D.I. 35 at 2 n.1). The Second Cause of Action is therefore dismissed. And because the Second Cause of Action is the only one asserted against the individuals named as Defendants, the individual Defendants are hereby dismissed from this action.

[3] In its earlier opinion (D.I. 23 at 1-2), the Court set out the allegations regarding the employment of each of the individual defendants named.

1

This case involves the sexual assault of Plaintiff by another DSU student on November 22, 2013 and the subsequent actions (or inactions) of the Defendants with respect to Plaintiff following that assault.

On November 22, 2013, Jason Faustin ("Faustin"), a fellow DSU student, sexually assaulted Plaintiff. (*Id.* ¶¶ 13-16). On or about November 25, 2013, Plaintiff reported the assault to Dr. Brian Stark, a professor of criminology at DSU. (*Id.* ¶ 18). Thereafter, Plaintiff was referred to Dr. Pauline Meek in DSU's counseling services department. (*Id.* ¶¶ 18-19). Despite Plaintiff "expressing her fear of encountering Faustin on campus," Dr. Meek arranged a meeting with Keel and Faustin "a couple of weeks" after the assault. (*Id.* ¶¶ 19-20). At the meeting, "Faustin apologized to Keel and agreed that he would no longer contact [her], including no longer touching or talking to her." (*Id.* ¶ 20).

Plaintiff continued to attend counseling sessions with Dr. Meek until February of 2015. (*Id.* ¶ 22). Plaintiff alleges that "during this time" Faustin continued "to repeatedly hug, touch, and attempt to speak with, and otherwise contact [her] . . . ." (*Id.*). Faustin reportedly "hugged Keel at band practice on an almost daily basis, making Keel angry and uncomfortable." (*Id.*). Plaintiff repeatedly reported this conduct to Dr. Meek. (*Id.*).

On or about August 22, 2014, and again on or about February 4, 2015, Plaintiff reported the assault anonymously through "silent witness forms on the [DSU Police Department ("DSUPD")] website." (*Id.* ¶ 23). On or about February 5, 2015, Plaintiff "detailed the rape to DSUPD Sergeant Joi Simmons, including that she told Faustin 'no' and asked him to stop, but he continued to assault her." (*Id.* ¶ 24). Plaintiff provided additional information to Sergeant Simmons, including Faustin's "history of this behavior," the identity of "five additional women" who purportedly had similar experiences with Faustin and Plaintiff's "mental and emotional

2

anguish." (*Id.*). "Later that day, Sergeant Simmons spoke with Faustin" who admitted that "Keel said stop several times and he did not stop." (*Id.*). DSUPD continued its investigation later in February of 2015 – including talking to "several female students" who reported similar experiences to Plaintiff's. (*Id.* ¶ 30).

After talking to Sergeant Simmons, Plaintiff "also spoke with Delaware State Title IX coordinator Candy Young." (*Id.* ¶ 26). Plaintiff alleges that she "detailed the rape and subsequent harassment she suffered to Ms. Young" and informed her of Plaintiff's academic struggles and that she shared a class with Faustin. (*Id. ¶* 26). "Despite this, Ms. Young failed to offer accommodations to Keel. Further, despite agreeing to provide Keel with a no contact order, Ms. Young never followed through with enacting a no contact order." (*Id.*).

Ultimately, Faustin was arrested. (*Id.* ¶ 27). After Faustin's arrest, Plaintiff alleges that she suffered harassment from DSU students and employees. (*Id.* ¶¶ 27-28). This included students "making aggressive gestures and calling her derogatory names" and on one occasion threatening to push her as she walked past. (*Id.*). Plaintiff alleges that as she "struggled with the ramifications of the sexual assault and the ongoing retaliatory behavior from other students, her attendance at band functions decreased. In response, Assistant Band Director Lenny Knight made harassing comments to Keel such as that he was tired of people who did not show up for band or who did not care because of 'bullshit' and 'drama.'" (*Id.* ¶ 28). Plaintiff alleges that Mr. Knight "berated" her for "making big things out of little things" and that he "ignored her concerns and made no attempt to stop the behavior." (*Id.*).

In March 2015, DSU "began a series of hearings to adjudicate whether Faustin was responsible for the sexual assault and rape of Keel." (*Id.* ¶ 33). "On or about March 31, 2015, the panel hearing the complaint found Faustin 'not responsible' for the sexual assault, rape, and

3

harassment of Keel." (*Id.* ¶ 36). Thereafter, on April 2, 2015, Keel appealed this decision, and a new hearing was granted on April 14, 2015 based on a "lack of due process, i.e. when a student can show an error in the hearing or arbitrariness in the finding against the weight of the evidence." (*Id.*). On May 11, 2015, "a second panel found Faustin 'responsible' for the sexual assault and rape of Keel" and suspended him for "a minimum of one (1) academic year – specifically 2015-2016." (*Id.* ¶ 37). In doing so, the panel stated:

> Having been found responsible for the sexual assault and rape of the complainant, the respondent is in violation of the General Standards of Conduct and Decorum and has exhibited violent behavior by sexually assaulting and raping the complainant. (Delaware State University, Division of Student Affairs Student Judicial Handbook, p. 5) Furthermore, the complainant has a right to continue her education and feel as though she is matriculating in a safe and secure academic environment. The complainant is now a senior. Removing the respondent for at least the 2015-2016 academic year will provide the complainant with the opportunity to do so.

(*Id.* ¶ 38).[4] Plaintiff alleges that in addition, she was also informed that "Faustin would not be allowed on campus, but assured . . . that if he were to come on campus, she would be informed and provided a police escort." (*Id.* ¶ 39).

Plaintiff alleges that "[i]n or about September of 2015, [DSU] allowed Faustin back on campus." (*Id.* ¶ 40). Specifically, she alleges that she entered her advisor's office and she came into "direct contact" with Faustin who was seated in the faculty member's office. (*Id.*). She asserts that "in violation of his purported suspension, Faustin was on campus that day, in the professor's office, to take a final exam" and that this "clearly violated the terms of the sanction, by allowing Faustin to continue his coursework at Delaware State while purportedly being suspended." (*Id.* ¶ 41).

---

[4] As with the original Complaint, Plaintiff quotes from documents in her Amended Complaint but does not attach those documents to the Amended Complaint. Defendants, however, do not challenge the accuracy of this statement.

In her Amended Complaint, Plaintiff alleges, on information and belief, that Faustin "was allowed to continue taking one or two classes up until the end of the semester on December 21, 2015" and that he was "routinely, physically on campus" until that date. (*Id*. ¶ 42). Plaintiff alleges that her friends saw Faustin on campus and called her to tell her where he was. (*Id*. ¶ 42). Plaintiff alleges that in response to Faustin's continued presence on campus, she "confronted both the Delaware State Title IX office and the Judicial Affairs office" and that both "denied responsibility and instructed Plaintiff to address the issue with the other office." (*Id*. ¶ 45). She alleges that Defendant Duffy emailed in response to her complaints, saying:

> We apologize that you felt uncomfortable and that you were unaware of Mr. Faustin's presents [sic] on campus yesterday afternoon. As the Office of Judicial Affairs does not manage Title IX cases any longer, we too were unaware that he was due to be on campus yesterday. The Office of Title IX, under Ms. Candy Young overseas [sic] all Title IX cases. As we informed you yesterday when you came to our office seeking clarity, the best place to gain a better understanding is with the Title IX Office directly. Again, we apologize for any trouble this may have caused and I will forward your email to the Office of Title IX immediately.

(*Id.* ¶ 45). Plaintiff alleges that Defendant Young also "denied responsibility, telling Keel in-person that the Judicial Affairs office was in charge of the arrangement with Faustin." (*Id.*)

Plaintiff graduated from DSU on December 21, 2015. (*Id*. ¶ 47). The following semester, DSU readmitted Faustin earlier than the time originally set based on the condition that he "abide by the Student Code of Conduct," and noting his prior unacceptable behavior. (*Id*. ¶ 49).

**B.      Procedural Background**

Plaintiff filed her Complaint on December 19, 2017, alleging gender discrimination in violation of Title IX (Count 1) and violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 (Count 2). (D.I. 1 ¶¶ 53-66). The Court dismissed the Complaint without prejudice as time-barred and for failure to state a claim. (D.I. 23, D.I. 24). On March 25, 2019, Plaintiff filed her Amended Complaint (D.I. 25), which was later corrected

5

(D.I. 30). The Amended Complaint included substantive edits to two paragraphs of her Complaint and three new paragraphs, as follows:

> (new) 41. In violation of his purported suspension, Faustin was on campus that day, in the professor's office, to take a final exam. This clearly violated the terms of the sanction, by allowing Faustin to continue his coursework at Delaware State while purportedly being suspended.
>
> (amended) 42. In fact, Keel is informed and believes and on that basis alleges that Faustin was allowed to continue taking one or two classes up until the end of the semester on December 21, 2015. Keel is further informed, believes and on that basis alleges that Faustin was routinely, physically on campus in connection with his continued coursework, despite his purported suspension, up until December 21, 2015. Keel was never informed that Faustin was allowed to continue his studies on camps, in violation of his sanction of suspension, nor was she ever provided a police escort, also in violation of Delaware State's sanction.
>
> (new) 43. Faustin was also often seen on campus by Keel's friends during the Fall semester of 2015. On each occasion that one of Keel's friends saw Faustin on campus, Keel's friends called Keel to inform her of his presence on campus, and exactly where he was on campus, so that she was able to take her safety in her own hands and avoid the areas of campus where Faustin was seen.
>
> (new) 44. In violation of Delaware State's sanction, at no time was Keel informed when Faustin would be on campus, nor was she ever provided a police escort while Faustin was on campus.
>
> (amended) 45. In response to Faustin's continued presence on campus, Keel confronted both the Delaware State Title IX office and the Judicial Affairs office regarding Delaware State's failure to adequately enforce its findings regarding the sexual assault and rape of Keel and its failure to adequately protect Keel. Each office denied responsibility and instructed Keel to address the issue with the other office. . . .[5]

(D.I. 30 ¶¶ 41-45).

[5] Paragraph 45 was amended to add the words "to Faustin's continued presence on campus" to the first sentence. The rest of the paragraph was unchanged from the Complaint.

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded factual allegations as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "To survive a motion to dismiss, [however,] a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997). Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

**B.     Statute of Limitations**

The statute of limitations for a cause of action under Title IX is subject to the pertinent state's statute of limitations for personal injuries. *See Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 77-78 (3d Cir. 1989). The statute of limitations for filing a cause of action under 42 U.S.C. § 1983 is also the relevant state's statute of limitations governing causes of action for personal injuries. *See Wilson v. Garcia*, 471 U.S. 261, 276-78 (1985); *accord Sameric Corp. of Delaware, Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998).

Delaware's statute of limitations for personal injury claims is two years. *See* 10 Del. C. § 8119. Thus, Plaintiff's Title IX claims (and her § 1983 claims) are subject to a two-year statute of limitations. *See Lamb-Bowman v. Delaware State Univ.*, C.A. No. 98-658 MMS, 1999 WL 1250889, at *8-9 (D. Del. Dec. 10, 1999); *see also Smith v. Delaware*, 236 F. Supp. 3d 882, 888 (D. Del. 2017) ("In Delaware, § 1983 claims are subject to a two-year limitations period." (internal citations omitted)). Section 1983 claims accrue "when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric,* 142 F.3d at 599.

The statute of limitations is an affirmative defense that a defendant usually must plead in its answer. *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). Nevertheless, the Third Circuit "permit[s] a limitations defense to be raised by a motion under Rule 12(b)(6) . . . if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (internal quotation marks omitted). Thus, "a district court may grant a motion under Rule 12(b)(6) raising a limitations defense if 'the face of the complaint demonstrates that the plaintiff's claims are untimely." *Id.* (citing *Schmidt*, 770 F.3d at 249 (internal quotations omitted)).

8

## III. DISCUSSION

### A. Statute of Limitations

There is no dispute that the statute of limitations for Title IX and § 1983 actions in Delaware is two years – making the relevant date in this case December 19, 2015. The dispute is whether the continuing nature of Plaintiff's claims – under either the "continuing tort doctrine" or the "continuing violation doctrine" – allows Plaintiff's claims.

Plaintiff asserts that the Report conflated the continuing tort doctrine and the continuing violations doctrine, treating the two as one and addressing only "continuing violations." (D.I. 35 at 3). She argues that the "continuing tort doctrine permits an action on a new tort when the victim of the tort 'has previously been the victim of a similar or identical discrete wrong but took no action.'" (*Id.* (citing *Major Tours, Inc. v. Colorel*, 799 F. Supp. 376, 388 n.3 (D.C.N.J. 2011)). She contrasts that to "the continuing violations doctrine" which "is based on the accrual of claims 'which are an aggregate of wrongs, no single one of which gives rise to a discrete claim.'" (*Id.*).[6]

Although referred to as different doctrines, the Court notes that the doctrines are frequently described interchangeably. *See, e.g.*, *Haddonbrook Assocs. v. Gen. Elec. Co.*, 427 F. App'x 99, 101 (3d Cir. 2011) (referring to the "continuing tort doctrine" as providing that an act that "may have occurred longer than the statutory period prior to the filing of an action, an action will not be

---

[6] As noted in the Court's earlier opinion, the continuing violation doctrine "is an 'equitable exception to the timely filing requirement.'" *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001) (quoting *West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995)). Under the doctrine, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period." *Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 481 (3d Cir. 2014) (quoting *Cowell*, 263 F.3d at 292). "[T]he court will grant relief for the earlier related acts that would otherwise be time barred." *Cowell*, 263 F.3d at 292. The doctrine, however, focuses on "continual unlawful acts, not continual ill effects from an original violation." *Weis–Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005) (quoting *Cowell*, 263 F.3d at 293).

9

barred if it can be based upon the continuance of that tort within that period"); *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, C.A. No. 04-2389, 2007 WL 1601491, at *15 (S.D.N.Y. June 4, 2007) ("Plaintiffs argue that any time-barred section 349 claims are saved by the common law doctrine referred to, seemingly interchangeably, as the continuing tort, continuing wrong, or continuing violation doctrine."); 54 C.J.S. Limitations of Actions § 223 ("A continuing violation or tort is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation."); 54 C.J.S. Limitations of Actions § 132 ("[U]nder the continuing tort or 'continuing violation rule,' where a tort involves a continuing or repeated injury, the limitations period does not begin to run until the date of the last injury or the date on which the tortious acts cease").

Here, Plaintiff objects to the Report's determination that her claims are time-barred. (D.I. 35 at 2-5). The Court will sustain Plaintiff's objection. Plaintiff's claims as currently pleaded fit within the continuing tort or continuing violation doctrine or both.[7] Plaintiff's claims in the Amended Complaint arguably allege wrongdoing within the limitations period, either as a new tort or a continuation of an earlier alleged tort. For example, Plaintiff alleges that DSU:

> In fact, Keel is informed and believes and on that basis alleges that Faustin was allowed to continue taking one or two classes up until the end of the semester on December 21, 2015. Keel is further informed, believes and on that basis alleges that Faustin was routinely, physically on campus in connection with his continued coursework, despite his purported suspension, up until December 21, 2015. Keel was never informed that Faustin was allowed to continue his studies on campus, in violation of his sanction of suspension, nor was she ever provided a police escort, also in violation of Delaware State's sanction.

---

[7] As previously noted, it is an "open question" in the Third Circuit whether the continuing violation doctrine (and presumably the continuing tort doctrine), which applies to Title VII cases, applies to those brought under Title IX. (*See* D.I. 23 at 8 n.3). The Court will defer addressing this issue, however, because the parties have not fully briefed it in connection with the motion to dismiss.

10

(D.I. 30 ¶ 42). These allegations broadly interpreted and accepted as true may be read to allege that Faustin returned to campus during the limitations period, and that Defendants by failing to address Plaintiffs' allegedly repeated complaints about his presence on campus and by passing the buck as to who was responsible for addressing her complaints, engaged in acts during the limitations period. Thus, the Court does not find the claims to be time barred on the face of the Amended Complaint.

### B. Plaintiff's Title IX Claim against DSU Board of Trustees

The Report correctly sets out the law regarding claims brought under Title IX. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A public-school student may bring suit against a school under Title IX for student-on-student sexual harassment, "but only where the [school] acts with deliberate indifference to known acts of harassment in its programs or activities" and "only for harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis Next Friend LaShonda D. v. Monroe Cty. Bd of Educ.*, 526 U.S. 629, 633 (1999).

Deliberate indifference requires a response (or failure to respond) that is "clearly unreasonable in light of the known circumstances." *Id* at 648; *see also Mercy Catholic Med Ctr.*, 850 F.3d at 566. To establish deliberate indifference, a plaintiff must show that the school knew about the plaintiff's sexual assault and ensuing harassment and failed to respond adequately. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1989) ("[W]e hold that a damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has actual

11

knowledge of discrimination in the recipient's programs and fails adequately to respond."); *see also Terrell v. Delaware State Univ.*, C.A. No. 09-464 (GMS), 2010 WL 2952221, at *2 (D. Del. July 23, 2010).[8] "To establish deliberate indifference, a plaintiff must show that the school made an official decision not to remedy the sexual harassment." *Terrell*, 2010 WL 2952221, at *2 (citing *Gebser*, 524 U.S. at 290).

Plaintiff asserts that "deliberate indifference" is evident from DSU's "failing to enforce its expulsion order and allow[ing] the perpetrator back on campus . . . for the entirety of the Fall 2015 semester to continue coursework, all while he was purportedly suspended." (D.I. 31 at 17-18; D.I. 35 at 6).[9] The Report did not squarely address that issue in its analysis of Plaintiff's Title IX claim (D.I. 34 at 12-13) and neither did Defendants in their motion papers.

The Court acknowledges that Plaintiff does not have a right to a particular outcome in response to her complaints. But here, as alleged, DSU acknowledged that Plaintiff "has a right to continue her education and feel as though she is matriculating in a safe and secure academic environment." (D.I. 30 ¶ 38). DSU then determined that "[r]emoving [Faustin] for at least the 2015-2016 academic year will provide [Plaintiff] with the opportunity to do so." (*Id.*). Moreover, Plaintiff alleges that she was also informed that in order to exercise her acknowledged right, "Faustin would not be allowed on campus," and that she was "assured . . . that if he were to come on campus, she would be informed and provided a police escort." (*Id.* ¶ 39). Thus, as alleged,

---

[8] The required showing is purposefully high "to eliminate any 'risk that [a recipient of federal funds] would be liable in damages not for its own official decision but instead for its employees' independent actions.'" *Davis*, 526 U.S. at 643 (quoting *Gebser*, 524 U.S. at 290-91).

[9] Plaintiff also references DSU's initial delays in taking action against Faustin and her prior allegations of harassment and retaliation from Faustin, members of the DSU band and a DSU employee. (D.I. 31 at 15-17; D.I. 35 at 6-7). As the Court previously determined, these allegations are not supported by any Third Circuit authority that would establish an actionable claim under Title IX.

12

DSU's failure to carry out its own sanction interfered with the very right to an educational opportunity that DSU acknowledged and issued the sanction to protect. Moreover, Plaintiff alleges that when she informed DSU of the issue and tried to address it, she was provided little response and essentially passed back and forth between departments denying responsibility. As alleged, at this stage, the Court finds that Plaintiff has sufficiently pleaded conduct on the part of DSU that was deliberately indifferent. Thus, the Court deems it inappropriate to dismiss Plaintiff's Title IX claims at this time.

## IV. CONCLUSION

For the foregoing reasons, the Court SUSTAINS Plaintiff's objections (D.I. 35). The Report is ADOPTED as to the dismissal of Plaintiff's Second Cause of Action and REJECTED as to the dismissal of Plaintiff's First Cause of Action as time barred and for failure to state a claim. Defendants' motion to dismiss Plaintiff's Amended Complaint (D.I. 30) is therefore GRANTED-IN-PART and DENIED-IN-PART. An appropriate order will issue.